PLYMOUTH PORT, INC. *vs*. FRANCES ELIZABETH SMITH
& others, trustees.[1]

No. 87-532.

Plymouth. September 16, 1988. — November 16, 1988.

Present: DREBEN, CUTTER, & FINE, JJ.

*Contract*, With broker. *Broker*, Commission.

An exclusive brokerage agreement for the sale of real estate, in which the
broker failed to include an explicit provision specifying the duration of
the contract, was effective for only a "reasonable" period of time.
[574-575]

Four years exceeded a reasonable period of time, in the circumstances, for an
exclusive real estate brokerage contract with no specified termination
date to remain in force. [575-577]

CIVIL ACTION commenced in the Plymouth Division of the
District Court Department on September 16, 1985.

On removal to the Superior Court Department, the case was
heard by *George N. Hurd, Jr.*, J.

*Joseph D. Rosenbloom* (*Mark R. Draymore* with him) for
the defendants.

*Michael P. Duffy* (*Philip M. Cronin & Richard M. Serkey*
with him) for the plaintiffs.

DREBEN, J. Relying on an alleged exclusive agency agree-
ment, the plaintiff-broker sought a ten percent commission on
the sale of the defendants' property which was effected through
the auspices of another broker. The sale took place four years
after the exchange of correspondence on which the plaintiff
bases his exclusive agency claim.

---

[1] John Vartanian and Jerome J. Forbes who, together with Smith, are
trustees of Franjohn Realty Trust.

A judge of the Superior Court awarded the plaintiff $52,500[2] (ten percent of the sale price) although the parties had failed to specify the duration of the contract or fix the amount of the commission and although there was evidence that custom in Plymouth County treated exclusive agency agreements without a specified termination date as having a life expectancy of several months, not several years. Citing *Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521, 524 (1957), and *Fall River Housing Joint Tenants Council, Inc.* v. *Fall River Housing Auth.*, 15 Mass. App. Ct. 992, 994 (1983), the judge regarded the writings as creating a valid bilateral contract terminable at will by either party upon the giving of reasonable notice. On the ground that notice had not been given to the plaintiff prior to the sale, he held that the exclusive agency agreement was still in force. He considered the cases cited "more compelling" than the trial testimony of custom and usage in Plymouth County. We reverse.

The alleged agreement consisted of two items. One was a letter of the broker dated October 2, 1981, which in relevant part stated:

> "Naturally, I would like the exclusive-right-to-sell but would accept an exclusive agency agreement. In return I will advertise and give it our best efforts.
>
> "Please let me know what the selling price would be and in general the terms you would be willing to discuss with prospects."

The other item was the following handwritten note appended by an attorney for the defendants to the broker's letter:

10/13/82 [3]

"Dear Jim:

You are authorized to list above land on an exclusive agency agreement basis for $30,000.00 an acre. 20% Down.

---

[2] The defendants had paid $48,500 as a commission to the broker who had produced the ultimate buyer.

[3] The parties agree that the date should have been 1981.

> Terms acceptable both parties. Subject to credit. You may place a sign on property at your expense.

> Cordially, Bob"

The judge found that although the plaintiff had been unable to procure a purchaser for the property, it had, by placing a "For Sale" sign on the property and by producing two potential customers, reasonably performed its obligations. The 1985 sale, however, was in no way related to the plaintiff's efforts.

We assume, for purposes of this opinion, that the October, 1981, exchange constituted a valid bilateral contract because of the broker's agreement to advertise and use his best efforts. Compare *Des Rivieres* v. *Sullivan*, 247 Mass. 443, 446 (1924); *Elliott* v. *Kazajian*, 255 Mass. 459, 462-463 (1926); *Bump* v. *Robbins*, 24 Mass. App. Ct. 296, 305 (1987); with *Coan* v. *Holbrook*, 327 Mass. 221, 223 (1951); *John T. Burns & Sons* v. *Brasco*, 327 Mass. 261, 263 (1951); *Julius Tofias & Co.* v. *John B. Stetson Co.*, 19 Mass. App. Ct. 392, 392-393 n.1 (1985); *Nichols* v. *Molway*, 25 Mass. App. Ct. 913, 915 (1987). We make this assumption despite the omission of important terms in the agreement and despite the evidence from both the plaintiff and the broker who effected the sale that more formal arrangements were usually needed to establish exclusive agency contracts.

While not discussed in *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622 (1975), exclusive brokerage contracts are nevertheless informed by that decision and its progeny. *Tristram's Landing*, at 629, provides that a broker is entitled to a commission when:

> "(a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract."

In addition, in order to protect a seller's expectation that the commission will be generated by the proceeds of sale and that

he will have to pay only a single commission, no commission is owing unless the seller has signed a binding agreement with the buyer procured by the broker. This is true even when the seller is responsible for the failure to enter into a binding contract. *Capezzuto* v. *John Hancock Mut. Life Ins. Co.*, 394 Mass. 399, 403 (1985). *Hunneman & Co.* v. *LoPresti*, 394 Mass. 406, 409 (1985). The reason is that if the broker intends to depart from the normal rule established by the *Tristram's Landing* case that he is only entitled to a commission when the transaction is completed, he "is in a better position than the seller to protect these expectations . . . ." by inserting an explicit provision in his agreement. *Capezzuto, supra* at 404. To hold a seller liable for a commission even if a sale is not consummated, the broker must be the one to alert the seller with a provision of "enough specificity." *Currier* v. *Kosinski*, 24 Mass. App. Ct. 106, 107 (1987). This burden is placed on the broker even when the negotiations are conducted by a sophisticated investor and not by an "uninitiated prospective seller."[4] See *Hunneman & Co.* v. *LoPresti*, 394 Mass. at 410 (Wilkins, J., concurring).

Consistent with the requirement that the broker must clearly and specifically alert the seller to the possibility that liability may be imposed even in the event the broker does not effect a sale, this court in *Bump* v. *Robbins*, 24 Mass. App. Ct. at 304, stated: "[T]o create an exclusive brokerage, . . . the parties must expressly and unambiguously indicate such an intent in the contract."

The same principle must be applied to the agreement at hand. If the broker intended to have the exclusive agency agreement continue until notified to the contrary, his was the burden to include such a provision. In its absence, the agreement was effective, at best, for only a reasonable period of time.

What is a reasonable period of time depends on the nature of the contract, the probable intention of the parties, and the attendant circumstances. *Powers, Inc.* v. *Wayside, Inc.*, 343

---

[4] In the *Capezzuto* case the negotiations were conducted by the manager of John Hancock's wholly owned properties and in *LoPresti* by the owners of an apartment complex.

Mass. 686, 691 (1962). *Barclay* v. *DeVeau*, 384 Mass. 676, 684 (1981). *Radley* v. *Johnson*, 25 Mass. App. Ct. 969, 971 (1988). An exclusive brokerage arrangement is made on the assumption by the seller that it will induce a maximum effort from the broker, *Nichols* v. *Molway*, 25 Mass. App. Ct. 913, 913 (1987), and, hence, on the additional assumption that the sale will be accomplished more speedily than with a general listing. In light of these expectations, as well as the expectations discussed in *Tristram's Landing*, and subsequent cases mentioned earlier in this opinion, we hold as matter of law that, in the circumstances of this case, four years[5] exceeded a reasonable time for the exclusive brokerage contract to remain in force. The seller was, therefore, free to treat the exclusive aspects of the agreement as lapsed. See *Powers, Inc.* v. *Wayside, Inc.*, 343 Mass. at 691.

The cases relied on by the judge which led him to require the defendant to give notice of termination are not apposite. They involved employment or franchise agreements where the expected performance was continuing and indefinite as to time. Here, however, the contract contemplated a definite result and not prolonged performance. As stated in *Harris* v. *McPherson*, 97 Conn. 164, 168 (1922):

> "Ordinarily in [exclusive brokerage] contracts the exclusive sale is given to the broker for a definite time. Where the duration of the contract is not specified, what is the life of the contract? It is to be observed that this contract is not one of a general agency employment, as that of a salesman; it is a contract to procure a purchaser for one specific piece of property, and is confined to the accomplishment of a particular transaction. The rule of law, that where there is a general employment of a servant with no provision as to the duration of the employment, the employment is at will and may be terminated by either party at any time without violating a contract, is not

---

[5] The purchaser was introduced to the seller by the broker effecting the sale approximately three months before the sale took place.

> pertinent to an employment for the accomplishment of one particular transaction. In such an employment, . . . the law implies its continuance for a . . . reasonable time."

See *Shaw* v. *Chiles*, 9 Ga. App. 460, 462 (1911); 1 Corbin, Contracts § 96 at 413 (1963); Farnsworth, Contracts § 3.28 n.19 (1982); 1 Williston, Contracts § 38 (3d ed. 1957).

Since the exclusive brokerage contract had lapsed at the time of the sale, the judgment for the plaintiff is reversed and judgment is to enter for the defendants.

*So ordered.*