JOSEPH A. ALEXANDER *vs.* WENDELL BERMAN & others.[1]

No. 89-P-714.

Middlesex. September 11, 1990. - October 25, 1990.

Present: KASS, KAPLAN, & IRELAND, JJ.

*Frauds, Statute of. Contract,* With broker. *Broker,* Commission.

In an action by a plaintiff seeking $50,000 for services as a business bro-
ker, claiming that a paper he and a defendant had initialed in 1981
entitled him to a ten percent commission for the 1985 sale of the de-
fendant's business, the parties were held not to be bound by an enforce-
able nonexclusive brokerage agreement at the time of the 1985 sale,
where the 1981 writing ceased to remain effective due to the seller's
clear expression of intent in 1983 that it have no further effect, as well
as to the subsequent absence of dealings between the parties until 1985,
and where any oral agreement the parties reached in 1985, whether
viewed as an attempt to revive the 1981 understanding or as a new
agreement altogether, was unenforceable under G. L. c. 259, § 7, which
expressly requires a business brokerage commission agreement to be in
writing. [460-462]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 2, 1986.

The case was heard by *Robert J. Hallisey,* J., on motions
for summary judgment.

*Barry L. Wieder* for the plaintiff.

*George A. Berman (Joanne E. Romanow* with him) for
Wendell Berman.

IRELAND, J. This case involves a dispute between a seller
and a broker over a commission on the sale of a business.
Effective beginning in March, 1985, G. L. c. 259, § 7, re-
quires that a business brokerage commission agreement be
set out in writing, and signed by the party to be charged, in

---

[1]Printcentre, Inc., and Joel Skolnick.

order to be legally enforceable.[2] We consider whether, on the particular facts, a memorandum initialed in 1981 concerning sale of the defendant Berman's printing business satisfies the requirements of § 7 with respect to a sale of that business made on different terms in 1985.

The facts are, for the most part, not disputed. On February 3, 1981, the plaintiff Alexander and the defendant Berman each initialed a piece of paper containing basic information[3] (the "1981 writing"). That writing was sufficient to satisfy the § 7 Statute of Frauds; it contained the basic elements (price, nonexclusivity, date, and commission percentage) of the agreement sought to be enforced, *Harrington*

---

[2]The text of G. L. c. 259, § 7, as inserted by St. 1984, c. 321, is as follows:

"Any agreement to pay compensation for service as a broker or finder or for service rendered in negotiating a loan or in negotiating the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein, including a majority of voting interest in a corporation, shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized. For the purpose of this section, the term 'negotiating' shall include identifying prospective parties, providing information concerning prospective parties, procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. The provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation for professional services of an attorney-at-law or a licensed real estate broker or real estate salesman acting in their professional capacity."

[3]The writing contained the name, address, and telephone number of Printcentre, Inc., the printing business which Berman wanted to sell, followed by the words

"Price 180M
Sls 200M
Salary Prof. etc. 45M
10% Comm. (to Finder-Broker)
Less than 10% retail
Non Exclusive Listing."

Berman testified that he did not recall the words "10% Comm (to Finder-Broker)" being on the paper at the time he placed his initials on it. He also testified that he anticipated paying such a commission if Alexander found him a qualified buyer. For our purposes, we assume that the writing contained the words at the time the parties placed their initials on it.

· v. *Fall River Hous. Authy.*, 27 Mass. App. Ct. 301, 306 (1989), and was signed (the initials are sufficient, *Irving* v. *Goodimate Co.*, 320 Mass. 454, 459 [1946]) by the party to be charged.

From 1981 through 1983, Alexander introduced potential buyers to Berman, but none was able to obtain adequate financing. In 1983, after one of those potential buyers offered Berman only "$13,000 cash," Berman instructed Alexander to cease discussing his business with anyone. For two years they had little or no contact.

In·the fall of 1985, Alexander called Berman and asked if he was still interested in selling his business. Berman responded, "Yes." Alexander then asked, "Do we have a deal?" Berman answered, "I presume that we have." Alexander then produced Joel Skolnick, a person Berman had known for approximately ten years prior to Alexander's telephone call, and with whom in the past as a potential buyer Berman had discussed the sale of his business. Skolnick turned out to be a qualified buyer, and Berman sold him his business on October 15, 1985, for approximately $500,000.

Alexander brought an action in April, 1986, seeking $50,000 for services as a business broker, claiming that the paper he and Berman had initialed February 3, 1981, remained vital and entitled him to a ten percent commission for the sale of the business to Skolnick. All parties moved for summary judgment. A judge of the Superior Court denied Alexander's motion and allowed the motions of Berman, Skolnick and Printcentre, Inc., relying on *Plymouth Port, Inc.* v. *Smith*, 26 Mass. App. Ct. 572 (1988), and holding that four years was too long, as matter of law, for the 1981 agreement to survive. Alexander appealed.

We are called upon to decide whether the parties were bound by an enforceable agreement in 1985. On that score, it seems to us dispositive that in 1983 Berman, on the undisputed evidence, had pronounced the 1981 agreement dead by instructing Alexander to stop looking for a buyer. Even if that had not been so, four years was well beyond the reasonable time for a nonexclusive brokerage agreement without a

specific term to remain in effect. See *Plymouth Port, Inc.* v. *Smith*, 26 Mass. App. Ct. at 576-577 (where agreement contemplated definite result, not prolonged performance, the "law implies its continuance for a reasonable time"). The original arrangement between Alexander and Berman involved obtaining a definite result, the sale of Berman's business. It is, therefore, proper to impose the operative element of "a reasonable time" to the 1981 agreement. The 1981 writing, as we have said, was silent as to its term of effectiveness. Alexander was free to seek and obtain Berman's assent to such a term, but did not do so. "The broker is in a better position . . . to protect these expectations by including [such] a provision." *Capezzuto* v. *John Hancock Mut. Life Ins. Co.*, 394 Mass. 399, 404 (1985).

Determining what is a reasonable time involves examining the "nature of the contract, the probable intention of the parties, and the attendant circumstances." *Plymouth Port*, 26 Mass. App. Ct. at 575. Here, the agreement ceased to remain effective because of Berman's express wishes and the passage of time. We view the 1983 conversation in which Berman told Alexander to cease discussing his business with anyone as indicating Berman's clear expression of intent that the 1981 agreement should no longer be effective. Where a nonexclusive broker is instructed to cease discussing a seller's business with anyone, the broker-client relationship is thereby terminated. The subsequent absence of dealings between the parties for two years further supports the agreement's lapse.

We now examine the 1985 events. Whether we view the 1985 conversation as an attempted resurrection of the 1981 agreement or a new agreement altogether, we reach the same result. We have oral negotiations about a broker's compensation for the sale of a business. Any oral agreement the parties reached in 1985 is unenforceable under § 7, which expressly requires such an agreement to be in writing. Compare *Johnston* v. *Holiday Inns, Inc.*, 565 F.2d 790, 793-796 (1st Cir. 1977), discussing Massachusetts cases comparable to this one.

Section 7 became effective in 1985, prior to the 1985 events. While the Statute of Frauds does not affect contracts made prior to its enactment, 2 Corbin, Contracts § 295 (1950), it does affect those entered into subsequent to its enactment. Introduction in 1985 of the special business brokerage Statute of Frauds manifested a legislative purpose to discourage claims for commission based on conversation which persons heard differently or remembered differently. It would ill serve the intent of the Legislature to recognize renewal of an expired written agreement by conversation alone.

*Judgment affirmed.*