BAY COLONY MARKETING COMPANY, INC. *vs.* FRUIT SALAD, INC.

No. 94-P-1796.

Essex. October 8, 1996. - November 19, 1996.

Present: WARNER, C.J., LAURENCE, & FLANNERY, JJ.

*Statute,* Construction. *Frauds, Statute of. Broker,* Food.

Discussion of the scope and applicability of G. L. c. 259, § 7, the Statute of Frauds governing brokerage and finders agreements. [664-666]

General Laws c. 259, § 7, operated to bar recovery on a broker's claim of breach of an oral contract for brokerages services in connection with the sale of food products, where such services did not fall within the express statutory exceptions to the requirement for a written contract. [666-667]

CIVIL ACTION commenced in the Superior Court Department on August 13, 1991.

The case was tried before *Richard E. Welch III,* J.

*Bryan J. Kerman* for the plaintiff.

*Howard R. Perkins, Jr.,* for the defendant, submitted a brief.

WARNER, C.J. This appeal turns on whether the Statute of Frauds, G. L. c. 259, § 7, bars the plaintiff food broker's recovery on an oral contract for the placement of the defendant seller's food products with various other food brokers and markets. In answer to special questions, a Superior Court jury found that the parties had an oral agreement, that the seller was in breach of that agreement, and that the broker's damages were $50,000.[1] Having properly preserved the issue,

[1]Special questions were also submitted to the jury on a theory of quantum meruit. Without reaching those questions, the jury had first returned a verdict on the contract count in favor of the plaintiff which did not name an actual figure for damages. When the jury were sent back for the further deliberations which resulted in the $50,000 verdict, the plaintiff agreed to waive the quantum meruit claim (The judge had suggested that the jury

the seller moved for judgment notwithstanding the verdict on the basis that the Statute of Frauds barred the broker's recovery. The trial judge denied the motion. After entry of judgment on the jury verdict, the seller appealed. We reverse.

We recite the pertinent facts in the light most favorable to the broker and to the verdict which it obtained. See *Tobin* v. *Norwood Country Club, Inc.*, 422 Mass. 126, 127 (1996). The broker is a New Hampshire corporation performing the functions of a broker in the food industry. The seller is a Massachusetts corporation with a primary place of business in Lawrence, and is primarily engaged in the business of cutting fresh fruit, packing it into jars, and selling it to the food service industry and to supermarket chains and retail stores. In April, 1989, pursuant to a written agreement, the seller retained the broker for purposes of placing the seller's food products in military commissaries, known as the military resale market.[2] About December, 1989, or January, 1990, having previously discussed the seller's desire to expand its sales into the civilian market on a national basis, the parties entered into a separate oral agreement whereby the broker agreed actively to solicit new accounts and sales territories for the seller's food products within civilian markets, in return for the seller's payment of a commission equalling three percent of the amount of its gross sales as so placed. The seller agreed to pay the broker, on a monthly basis, a commission for all gross sales to accounts resulting directly or indirectly from the broker's efforts (i.e., through other food brokers which the broker procured), and agreed to continue to pay the broker a three percent commission for as long as the seller's products continued to be sold to these accounts. This agreement had no termination date.

After entering this oral agreement for the civilian market, the broker secured a number of supermarket chains as new accounts for the seller's products. The seller paid the broker

"would not reach the quantum meruit claim having decided that there was a breach of contract"). Compare *Heil* v. *McCann*, 360 Mass. 507, 511 (1971). All other counts of the complaint either were voluntarily dismissed or were waived by the plaintiff's failure to have them submitted to the jury. Our review is thus confined to the plaintiff's claim based upon breach of the oral contract.

[2]This agreement was for a term of twenty-six weeks, later extended orally for an additional twenty-six weeks. Commissions due the broker under this written agreement are not at issue.

its commission under the oral agreement until September 30, 1990, when payments ceased, although the seller continued to sell its products to accounts secured by the broker. On April 5, 1991, at which time the broker was not actively performing any services for the seller, the broker received a thirty-day termination letter (dated April 3) from the seller. This action followed. From early 1991 through 1993, the seller sold approximately $1,500,000 of its products to accounts which the broker had secured.

General Laws c. 259, § 7 (inserted by St. 1984, c. 321), provides, in full:

> "Any agreement to pay compensation for service as a broker or finder *or* for service rendered in negotiating a loan or in negotiating the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein, including a majority of voting interest in a corporation, shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized. For the purpose of this section, the term "negotiating" shall include identifying prospective parties, providing information concerning prospective parties, procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. The provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation for professional services of an attorney-at-law or a licensed real estate broker or real estate salesman acting in their professional capacity" (emphasis supplied).

In denying the seller's motion for a directed verdict, the judge ruled that § 7 does not apply to all brokerage contracts, but is confined to brokerage contracts relating to the negotiation of a loan, see *Charles River Mort. Co.* v. *Baptist Home, Inc.*, 36 Mass. App. Ct. 277, 281-282 (1994), or for the purchase and sale of a business, see *Alexander* v. *Berman*, 29 Mass. App. Ct. 458, 458-459, 461-462 (1990), and thus that the statute did not apply to the oral brokerage contract at issue. We do not construe the statute so narrowly.

We must ascertain the intent of a statute from all of its parts, from the subject matter to which it relates, and we

must construe it so as to render the legislation effective, consonant with reason and common sense. See *Globe Newspaper Co.* v. *Beacon Hill Architectural Commn.*, 421 Mass. 570, 592 (1996); *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996). The statutory language itself is our principal source of insight into the legislative purpose. *Scheffler's Case*, 419 Mass. 251, 255 (1994). We think it plain that the purpose of the statute is to require written agreements for compensation for certain services,[3] although the scope of such services, based upon the statutory language, is unclear. Each provision of the statute is to be given some meaning. See *Volin* v. *Board of Pub. Accountancy*, 422 Mass. 175, 179 (1996); *Champigny* v. *Commonwealth, supra* at 252. Accordingly, we interpret the statute to require written agreements where there is to be compensation "for service as a broker or finder," *or* "for service rendered in negotiating a loan or in negotiating the purchase, sale or exchange of a business [or component elements thereof]." The repetition of the words "for service" in discrete phrases coupled with the use of the disjunctive "or" suggests that the Legislature considered each category of services separately.[4] "The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise." *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 212 (1995), quoting from *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Authy.*, 350 Mass. 340, 343 (1966).

[3]See *Alexander* v. *Berman*, 29 Mass. App. Ct. at 462, where, in discussing § 7, we said that "[i]ntroduction in 1985 of the special business brokerage Statute of Frauds manifested a legislative purpose to discourage claims for commission based on conversation which persons heard differently or remembered differently." Compare *Pappas Industrial Parks, Inc.* v. *Psarros*, 24 Mass. App. Ct. 596, 598 (1987). *Alexander* concerned a dispute between a seller and a broker over a commission on the sale of a business, and we did not intend our opinion in that case to suggest any limitation in the applicability of § 7 to other types of brokerage contracts (apart from exceptions in the statute itself). No such issue was before us.

[4]The broker asserts that the Legislature's specific definition of the word "negotiating" in the statute, coupled with its failure to define the terms "broker" or "finder," evinces an intent to limit the applicability of the statute to the negotiation of a loan or the transfer of some or all of a business. We disagree. In this context, we discern no special significance in the latter terms and give them their plain meaning. The Legislature's definition of "negotiating," which is relevant only to the *second* set of services within the statute relative to loans or transfers of whole or partial interests in businesses, is thus distinct and does not bear upon our conclusion.

*Bello* v. *South Shore Hosp.*, 384 Mass. 770, 782 (1981). Nothing in the language of the statute or the context in which it is used demands or even suggests other than a disjunctive meaning here, or that it was the intent of the Legislature to limit the applicability of the Statute of Frauds to brokers of loans and businesses, as the broker contends.[5]

The broker argues, however, not without some force, that our interpretation of § 7 renders it applicable to myriad occupations (e.g., stockbrokers and commodity brokers), and thus that it is unlikely that the Legislature intended that the statute have such broad application. Mindful of "the maxim of statutory construction which suggests that a statutory expression of one thing is an implied exclusion of other things omitted from the statute[,]" *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Authy.*, 368 Mass. 425, 432 (1975), see *Aquino* v. *Civil Serv. Commn.*, 34 Mass. App. Ct. 538, 541 (1993), we think that this argument does not prevail in light of the Legislature's express exception of two occupations from the statute's requirement of a written compensation

---

[5]Our conclusion is bolstered by reference to the legislative history of the statute. Where a legislative provision is ambiguous or unclear, as here, we may refer to extrinsic aids to assist us in our interpretation. *Department of Community Affairs* v. *Massachusetts State College Bldg. Authy.*, 378 Mass. 418, 427 (1979). Compare *Western Mass. Elec. Co.* v. *Department of Pub. Utils.*, 373 Mass. 227, 234 n.12 (1977). As originally proposed, the language of the first sentence of the statute required a written agreement to pay compensation "for services *as a broker a finder or in any way rendered* in negotiating a loan or in negotiating the purchase, sale or exchange of a business . . ." (emphasis supplied). 1984 House Doc. No. 4893. This language, which tends to support the narrow interpretation the broker urges on appeal, was essentially retained in a substituted bill. 1984 House Doc. No. 6272. However, in the final version of the statute, as inserted by St. 1984, c. 321, the Legislature deleted the words "in any way" as appearing in the House bills, substituting therefor the words "for service." By substituting this second express reference to "service," the Legislature demonstrated an intent to distinguish the types of services for which a written agreement for compensation is required. Finally, we disagree with the broker's assertion that the title of the statute, "An act further regulating the sale of certain businesses and property," requires a contrary conclusion. The title is also ambiguous, suggesting that the statute applies only to "certain" businesses and property, which are not described. Moreover, by its plain terms, the statute is not limited to "the sale of certain businesses and property." The title cannot control the plain provisions of the act, see *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474, cert. denied, 464 U.S. 850 (1983), and is not conclusive as to its ambiguities.

agreement for professional services, i.e., "an attorney-at-law or a licensed real estate broker or real estate salesman acting in their professional capacity." The rationale for carving out these exceptions may have been that such professionals frequently provide services respecting loans or the transfer of a business which fall within the definition of "negotiating"; this, however, does not compel the conclusion that the statute applies only to those activities. Indeed, apart from these express exceptions, we do not find in the statute any basis for concluding that the Legislature intended to obviate disputes over claimed commissions for services rendered in certain commercial brokerage contexts, but not others.

*Judgment reversed.*

*Judgment notwithstanding the verdict is to enter for the defendant.*