Lauriat, J.
This matter is before the Court on the defendants’ motion to dismiss the plaintiff s amended complaint. The plaintiff has asserted claims against both defendants for breach of contract, negligence, negligent misrepresentation, fraud/deceit, violation of G.L.c. 104, §8, quantum meruit, promissory estoppel, constructive trust for unjust enrichment, and part performance. After a hearing, the defendants' motion to dismiss is allowed in part and denied in part.
BACKGROUND
The facts, as alleged in the plaintiffs complaint, are as follows. In May of 1996, Applied Analytics, Inc. (“Applied”), acting through its president Yoav Barshad (“Barshad”), entered into a manufacturer-sales agreement with North East Technical Sales, Inc. (“North East”), whereby North East was to serve as Applied’s exclusive sales representative in New York, Pennsylvania, New Jersey, Delaware, Maryland and Washington, DC (collectively known as “the territory”). North East asserts that this agreement is set forth in a series of writings consisting of various e-mails and a form labeled “Sales Representative Agreement,” a copy of which was submitted to this Court. The copy is marked “DRAFT” and is not signed by anyone on behalf of Applied.
The agreement states that Applied was to pay North East a 20% sales commission for any order of Applied’s products placed from within the territory, regardless of whether the order was obtained by Applied or North East. In return, North East was to use its best efforts and devote such time as may be reasonably necessary to promote the sale of Applied’s products within the territory. This agreement, which extended for a period of one year, was terminable in three situations: upon thirty days prior written notice, upon breach of either party if such party failed to remedy the breach within thirty days after notice of such breach, or upon the transfer of all or a substantial part of either party’s assets.
Between June of 1997 and March of 1999, several orders were placed within the territory for products totaling over $132,728. Barshad, on behalf of Applied, subsequently promised to pay North East a 20% commission as a result of each of those sales. Applied never paid these commissions. North East also worked to secure an account with DuPont, whose orders are expected to approximate $750,000 over the next three years. In addition, North East worked for more than one year to secure an account with Millennium. Millennium was prepared to make a purchase from Applied in January of 1999 in the amount of $50,000, but Barshad delayed the order. North East expects that Millennium’s future orders will approximate $220,000.
On March 21, 1999, Barshad gave notice of termination to North East via e-mail. North East asserts that notice of termination was given in order to deprive North East of the commissions which it had already earned and those which it was about to earn because of the DuPont and Millennium accounts.
DISCUSSION
When the court considers a motion to dismiss for failure to state a claim upon which relief can be *98 granted, all well-pled factual allegations in the complaint are to be taken as true, and the plaintiff is entitled to all favorable inferences to be drawn therefrom. Nader v. Citron, 372 Mass. 96, 98 (1977). Such a motion, made pursuant to Mass.R.Civ.P. 12(b)(6), should not be allowed unless it is shown beyond doubt that the plaintiff is not entitled to relief tinder any facts which could be proved in support of the claim. Spinner v. Nutt, 417 Mass. 549, 550 (1994). A complaint is sufficient to survive a motion to dismiss “if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and theory on which he seems to rely may not be appropriate. "Nader, 372 Mass, at 104; New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 29-30 (1988).
I.
Applied asserts that North East’s breach of contract claim should be dismissed because any contract that existed was oral and therefore violated G.L.c. 259, §§1 and 7. General Law c. 259, §1 provides that “no action shall be brought . . . upon an agreement that is not to be performed within one year from the making thereof, unless the promise, contract or agreement ... is in writing and signed by the party to be charged therewith ...” This statutory language applies only to agreements that necessarily require more than a year for performance. See Marble v. Clinton, 298 Mass. 87, 89 (1937).
Massachusetts law also provides as follows:
Any agreement to pay compensation for service as a broker or finder or for service rendered in negotiating a loan . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized. For the purpose of this section, the term “negotiating” shall include identifying prospective parties, providing information concerning prospective parties, procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transactions.
G.L.c. 259, §7.
In this case, G.L.c. 259, §1 will not operate to nullify the contract because the contract at issue was for a period of one year and therefore did not run afoul of the statute. Section 7, however, requires that the type of contract alleged by the plaintiff be in a writing signed by the defendant. See Bay Colony Marketing, Co., Inc. v. Fruit Salad, Inc., 41 Mass.App.Ct. 662 (1996) (agreement for solicitation of new accounts and sales territories for the seller’s food products in return for a commission was covered by section 7 and therefore required a writing). In this case, North East has presented no evidence of a written contract signed by Barshad or any other representative of Applied. Accordingly, this claim must be dismissed.
II. .
Because the breach of contract claim against Applied must be dismissed, the breach of contract claim against Barshad must also be dismissed, since any alleged contract violates G.L.c. 259, §7. Even if the breach of contract claim were viable, Barshad would not be a proper party. As an officer of Applied, which is incorporated under G.L.c. 156(b), he does not incur personal liability except “in rare particular situations to prevent gross inequity.” Evans v. Multicon Construction Corp., 30 Mass.App.Ct. 728, 732 (1991). Such a situation might arise when:
(1) there is active and pervasive control of related business entities by the same controlling persons and there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is “a confused intermingling of activity if two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.”
Id., quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620 (1968). North East has presented no such factual allegations. Accordingly, the breach of contract claim against Barshad must be dismissed.
III.
In its complaint, North East asserts that the defendants owed it several duties, including a duty of good faith and fair dealing, a duty to timely pay commissions, and a duly to timely notify North East if the defendants were not going to pay the commissions. North East claims that because the defendants breached these duties, they were negligent, to wit, that the expressed and implied terms of the contract were also duties.
The Supreme Judicial Court has held that “failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made.” Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 368 (1997). The Court reasoned that:
Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction. Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed.
Id., quoting W. Prosser & W. Keeton, Torts §92, at 656 (5th ed. 1984).
In this case, North East does not allege that any express or implied duties existed apart from the defendants’ intent to enter into a contractual relationship. There is simply no evidence of any obligation by Applied, separate from the contractual obligations. As *99 such, plaintiffs claim against the defendants in negligence must be dismissed.
IV.
North East alleges in its complaint that the defendants made negligent and intentional misrepresentations by continually promising to pay commissions. To make a claim for negligent misrepresentation, North East must allege that the defendants “(1) in the course of. . . business, (2) supplied] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and [that they] (6) . . . fail[ed] to exercise reasonable care or competence in obtaining or communicating the information.” Golber v. Baybank Valley Trust Co., 46 Mass.App.Ct. 256, 257 (1999). In this case, North East’s allegations concern the defendants’ intent and not their negligence. As a result, the negligent misrepresentation claim must be dismissed.
Massachusetts courts have held that “present intention as to a future act is a fact.. .[and] may be made the foundation of an action for deceit.” Barret Assoc., Inc. v. Aronson, 346 Mass. 150, 152 (1963). In this case, North East alleges that the defendants’ statements were a present intention. As such, those statements could be the foundation for a viable deceit action, and the claim for fraud/deceit will not be dismissed.
V.
North East further alleges that the defendants, on numerous occasions, described plaintiff in false and degrading terms to plaintiffs competitors in order to damage plaintiffs reputation and business. In their motion to dismiss, the defendants argue that any alleged unfair or deceptive acts occurred “primarily and substantially” outside of Massachusetts and that the Court therefore does not have jurisdiction to hear this claim.
In challenging the jurisdiction of a court to hear a G.L.c. 93A claim, the “burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the Commonwealth.” G.L.c. 93A, §11. Two cases are instructive on this issue. In Bushkin Associates, Inc. v. Raytheon, Co., 393 Mass. 622 (1985), the Appeals Court established a three-factor analysis to determine whether a court should exercise jurisdiction in a c. 93A case. The court considered: (1) where the defendant committed the deceptive or unfair act or practice; (2) where the plaintiff received and acted on the unfair act or practice; and, (3) the situs of the loss. Id. In Sonesta Int’l Hotels Corp. v. Central Florida Inc., Inc., 47 Mass.App.Ct. 154 (1999), the Appeals Court affirmed the trial court’s focus “on the place or places of occurrence of the offending acts.” Id. at 157.
Applying the three-factor analysis as set forth in Bushkin Associates and giving focus to the place of occurrence of the offending act per Sonesta Int’l Hotels Corp., this court is satisfied that its exercise of jurisdiction is appropriate. Although the plaintiff is a Pennsylvania corporation and any unfair practice resulted in loss outside of Massachusetts, this Court must focus on the place of occurrence of the offending act. The unfair practices were allegedly perpetrated by a Massachusetts corporation within Massachusetts, and this court therefore concludes that the acts occurred “primarily and substantially” within the Commonwealth. The defendants have failed to demonstrate otherwise. Accordingly, the G.L.c. 93A claim will not be dismissed.
VI.
General Law c. 104, §§7-9 provide guidelines for the payment of commissions between a principal and a sales representative. North East alleges that the defendants’ failure to pay commissions violates the guidelines and establishes a cause of action under §9. Section 7, however, defines a sales representative as “. . . a person other than an employee, who contracts with the principal to solicit wholesale orders in the commonwealth and who is compensated, in whole or in part, by commission . . .” Because plaintiff alleges it contracted to solicit orders in the territory, and not within Massachusetts, the plaintiff is not a sales representative within the statutory definition. Accordingly, this claim must be dismissed.
VII.
General Law c. 259, §7, which requires agreements to pay compensation for service as a broker or finder to be in writing, also applies to “a contract implied in fact or in law to pay reasonable compensation.” Coúrts have held that claims of promissory estoppel and quantum meruit are included in this category and that recovery on such claims is therefore barred by the statute. See Cox v. Thornton Assoc., 8 Mass. L. Rptr. 715, Mass.Super.Ct. (August 4, 1998); Rezendes v. Barrows, 7 Mass. L. Rptr. 216., Mass.Super.Ct. (July 31, 1997); see also Loranger Construction Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 156-59 (1978). Because the contract in this case was not in writing, the plaintiffs claims of quantum meruit and promissory estoppel must be dismissed.
VIII.
A constructive trust is a device employed in equity, in the absence of any intention of the parties to create a trust, “in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation or where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.” Barry v. Covich, 332 Mass. 338, 342 (1955). In the present case, the plaintiff has not alleged that any property was obtained by fraud and has not alleged any fiduciary relationship. Accordingly, this Court declines to impose a constructive trust.
*100 IX.
Part performance is not itself a cause of action, but rather, will allow a party to maintain an action on an oral agreement despite the statute of frauds. Therefore, the issue of part performance is more properly addressed within the breach of contract claim. This court concludes, however, that North East’s performance on the contract was not partial, but rather constituted full performance of its contractual duties. North East alleges that it fulfilled its obligations under the agreement until the defendants terminated the agreement. Accordingly, quantum meruit or promissory estoppel, rather than part performance, would be more appropriate arguments. As stated above, however, G.L.c. 259, §7 precludes recovery on an oral brokerage agreement under both quantum meruit and promissory estoppel.
ORDER
For the foregoing reasons, the Defendants’ Motion to Dismiss the Plaintiff s Amended Complaint is ALLOWED as to Counts I, II, III, IV, VII, VIII, IX, X, and XI and DENIED as to Counts v. and VI.