JONATHAN B. KAPLAN *vs.* CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]

No. 98-P-1573.

Suffolk. October 16, 2000. - March 23, 2001.

Present: BROWN, SMITH, & LENK, JJ.

*Retirement. Public Employment,* Retirement, Termination. *Statute,*
Construction. *Contributory Retirement Appeal Board.*

The Contributory Retirement Appeal Board did not err in concluding that a
   former State employee, with six years of service, was entitled to the return
   of his accumulated retirement deductions with interest and was not eligible
   for a retirement allowance under G. L. c. 32, § 10(2)(*b*), where the board
   determined that the later enacted provisions of G. L. c. 32, § 5(1)(*m*),
   which were applicable to the employee, required ten years' service for
   eligibility for a retirement allowance. [202-206]

CIVIL ACTION commenced in the Superior Court Department on
October 20, 1997.

The case was heard by *Charles T. Spurlock,* J.

*Thomas F. Gibson* for the plaintiff.

*Christopher O. Quaye,* Assistant Attorney General, for the
defendants.

BROWN, J. The plaintiff, formerly a permanent State govern-
ment employee, was less than fifty-five years old when his
employment with the State Board of Retirement was terminated
at the end of 1989 due to budgetary constraints. He had a little
over six years of creditable State service. Thereafter, the plaintiff
left his accumulated deductions in the retirement system for six
additional years until, in April of 1996, he applied to the State
Board of Retirement for a retirement allowance to take effect on
his fifty-fifth birthday, in June of that year. His application was
denied because he had less than the ten years of creditable

---

[1]State Board of Retirement.

service required by G. L. c. 32, § 5(1)(*m*).[2] The denial was upheld by the Contributory Retirement Appeal Board (CRAB) and then by a judgment of the Superior Court. This appeal ensued, in which the plaintiff asserts that CRAB's decision was incorrect because he was eligible for an allowance under an earlier-enacted statutory provision, G. L. c. 32, § 10(2)(*b*), that requires only six years of service.[3] Put in terms of the applicable standard of review (which we draw from G. L. c. 30A, § 14[7]), the question before us is whether CRAB made an error of law in concluding that § 5(1)(*m*) rather than § 10(2)(*b*) governed the plaintiff's application. There was no error.

None dispute that the plaintiff falls within the literal scope of G. L. c. 32, § 10(2)(*b*), inserted by St. 1951, c. 784, § 1, and as amended through St. 1973, c. 1041:

> "Any member classified in Group 1, Group 2 or Group 4, who has completed six or more years of creditable service, and who, before attaining age fifty-five . . . is removed or discharged from his office or position without moral turpitude on his part . . . or any such member whose office or position is abolished, who leaves his accumulated total deductions in the [retirement system], shall have the right upon attaining age fifty-five, or at any time thereafter, to apply for a *termination retirement allowance* . . . . Such allowance shall be determined in accordance with the provisions of [§ 5], or the provisions of any other section governing superannuation retirement applicable to such member . . ." (emphasis supplied).

On the other hand, the more recently enacted G. L. c. 32, § 5(1)(*m*), inserted by St. 1977, c. 744, and as amended through St. 1991, c. 138, § 385, reads in pertinent part as follows:

> "Notwithstanding any provision of this chapter to the contrary, any member classified in Group 1 or Group 2, except for elected officials subject to the provisions of [§ 10(2)(*b*)], whose employment first commenced on or

---

[2]Ultimately, the plaintiff received a return of his accumulated deductions and interest thereon.

[3]The plaintiff's alternate claim, of reasonable reliance on the advice of his superior that he was eligible for a retirement allowance, was unsuccessful below and has not been pursued on appeal.

after [January 1, 1978], and who has not completed ten or more years of creditable service before attaining the mandatory age requirements of this chapter . . . shall on the termination of his employment be entitled to a return of his accumulated deductions with interest. Such return of said accumulated deductions shall be in lieu of any *superannuation retirement allowance* provided under this chapter" (emphasis supplied).

Because the plaintiff was classified in Group 1, was not an elected official, was first relevantly employed after 1978, and had not completed ten years of creditable service, the literal application of § 5(1)(*m*) has two direct consequences. First, the plaintiff on the termination of his employment was entitled to a return of his accumulated deductions with interest. Second, such return was to be in lieu of "any superannuation retirement allowance" under c. 32.

The plaintiff posits that, because he did not seek a "superannuation retirement allowance," but a "termination retirement allowance" under § 10(2)(*b*), he is unaffected by the plain language of § 5(1)(*m*). To support his view that CRAB ignored a statutory separateness in the two allowances, he points to enacted subject headings in sections 5 and 10.[4] The heading of § 5 is "Superannuation Retirement" and under § 10 (the heading of which is "Resignation, Failure of Re-election or Reappointment, Removal or Discharge"), the subheading of § 10(1)[5] is "Right to a Superannuation Retirement Allowance" while

---

[4]Though not cited by the plaintiff, the disjunctive references to these allowances in G. L. c. 32, § 3(6)(*e*), (*f*), also may lend a measure of support to his view.

[5]General Laws c. 32, § 10(1), as amended through St. 1967, c. 826, § 18, states in part as follows:

> "Any member [of Group 1, 2, or 4 who meets criteria generally involving resignation, failure of re-election or reappointment, or removal or discharge], shall, upon his written application . . . receive a *superannuation retirement allowance* . . . . Such retirement allowance of any member [of] Group 1 or Group 2 shall be determined and computed in accordance with [§ 5(2)(*a*), (*b*)], and [limited by § 5(2)(*c*), (*d*)], and shall be based on such member's age and number of years and full months of creditable service on the date the retirement allowance becomes effective, and if such retirement allowance becomes effective before such member has attained age fifty-five the per cent to be used

that of § 10(2) is "Right to a Termination Retirement Allowance." St. 1945, c. 658, § 1. Accordingly, the plaintiff notes, the body of § 10(1) speaks of a "superannuation retirement allowance" and that of § 10(2) refers only to a "termination retirement allowance."

Nevertheless, it is far from plain that the § 5(1)(*m*) reference to "any superannuation retirement allowance" under c. 32 cannot include a § 10(2)(*b*) "termination retirement allowance" under the circumstances: where neither phrase is defined in the statute; where § 5(1)(*m*) was enacted later than, not contemporaneously with, § 10; where the minimum age of fifty-five to receive a § 10(2)(*b*) allowance is also generally the age of earliest superannuation retirement under G. L. c. 32, § 5(1)(*a*); and where the § 10(2)(*b*) allowance is to be "determined in accordance with the provisions of [§ 5], or the provisions of any other [applicable] section governing superannuation retirement." § 10(2)(*b*). Additionally, much as the title of an act cannot limit its operation to a field more narrow than that established by the act itself, see *Perlera* v. *Vining Disposal Serv., Inc.*, 47 Mass. App. Ct. 491, 498 (1999), the various headings cited cannot control the specifics of the statutory provisions, although they may shed light on ambiguous language, see *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474,

---

in computing such retirement allowance shall be the per cent for age fifty-five as appearing in the table in [§ 5(2)(*a*)] with one tenth of one per cent subtracted for each year the age at last birthday preceding retirement is under age fifty-five. . . . The retirement allowance of any member [of] Group 4, who is eligible to receive a *superannuation retirement allowance* under . . . this subdivision shall be determined and computed in accordance with [§ 5(2)(*a*), (*b*)] and [limited by § 5(2)(*c*), (*d*)] shall [sic] be based on such member's age and number of years and full months of creditable service on the date the retirement allowance becomes effective, provided that if such member, classified in Group 4, has not attained age forty-five on the date of his termination of service the normal yearly amount of such allowance shall be equal to that prescribed for a member classified in Group 1, and if such retirement allowance becomes effective before such member has attained age forty-five the per cent to be used in computing such allowance shall be the per cent for age forty-five as appearing in [§ 5(2)(*a*)] with one tenth of one per cent subtracted for each year the age at last birthday preceding retirement is under age forty-five" (emphasis supplied).

cert. denied, 464 U.S. 850 (1983).[6] We think some ambiguity inheres in the legislative phraseology, and therefore also explore other sources of statutory insight. Cf. *Bay Colony Mktg. Co.* v. *Fruit Salad, Inc.*, 41 Mass. App. Ct. 662, 666 n.5 (1996) (title "not conclusive as to [act's] ambiguities"). For several reasons we think a reasonable interpretation is that the "termination" retirement allowance set out in § 10(2)(*b*) counts as a subspecies of "any superannuation retirement allowance" for the purposes of § 5(1)(*m*).

First, that § 10(2)(*b*) stands affected by § 5(1)(*m*) is suggested by the latter's applicability "[n]otwithstanding any provision of [c. 32] to the contrary," cf. *Police Dept. of Boston* v. *Fedorchuk*, 48 Mass. App. Ct. 543, 546-547 (2000), and confirmed by the explicit invocation of § 5 in § 10(2)(*b*). The plaintiff argues the latter reference incorporates only the retirement allowance calculation method in § 5(2). If that were so, the Legislature could have restricted its language to that particular subsection, much as it did in referring specifically to § 5(2) in § 10(1). See note 5, *supra*.[7] The plaintiff's proposal to focus on § 5(2) rather than on all relevant provisions of § 5 would require us to overlook plain statutory language, contrary to settled principle. See *Retirement Bd. of Concord* v. *Colleran*, 34 Mass. App. Ct. 486, 488-489 (1993).

Second, and looming large in our analysis, § 5(1)(*m*) contains an exception for "elected officials subject to the provisions of [§ 10(2)(*b*)]." If, as the plaintiff suggests, § 5(1)(*m*) were not applicable to members qualifying for the "termination" allowance of § 10(2)(*b*), the exception would be superfluous. "If a sensible construction is available, we shall not construe a statute to make a nullity of pertinent provisions . . . ." *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000).

Finally, in construing the retirement statute, we habitually

---

[6]We note that the jurisprudence concerning the interpretive significance of section headings seems to parallel that for the over-all titles of acts. See, e.g., *Baruffaldi* v. *Contributory Retirement Appeal Bd.*, 337 Mass. 495, 501 (1958); *Cumberland Farms, Inc.* v. *Milk Control Commn.*, 340 Mass. 672, 678 (1960).

[7]The Legislature's § 10(1) references to § 5(2) also are directed explicitly to how the allowance is "computed." Section 10(2)(*b*), by contrast, does not use such specific language of computation.

refrain from substituting our judgment for that of CRAB where its interpretation is reasonable. See *Flemings* v. *Contributory Retirement Appeal Bd., supra* at 375; *Hosking* v. *Contributory Retirement Appeal Bd.*, 49 Mass. App. Ct. 710, 712 (2000). We find nothing unreasonable in reading the subsequently enacted language of § 5(1)(*m*), "any[8] superannuation retirement allowance provided under this chapter," to encompass the "termination" retirement allowance of § 10(2)(*b*).

*Judgment affirmed.*

---

[8]CRAB's reading is also consistent with the Legislature's choice of the broad word "any," as opposed to the mere article "a," in describing the types of allowances that the return of accumulated deductions stands in lieu of.