Brassard, J.
The plaintiff, Waste Management of Rhode Island, Inc. (“Waste Management") alleges that the defendant, PennAtlantic Group, Inc. (“PennAtlantic”) materially breached its waste brokering contract with Waste Management by refusing to pay invoices for landfill spaces purchased on account (Count I). PennAtlantic has filed a counterclaim alleging that Waste Management breached a verbal contract between PennAtlantic and Waste Management for the hauling of processed demolition material (Count I).
The court now has before it cross motions for summary judgment. Waste Management contends that there is no dispute as to the amount of money PennAtlantic owes under the terms of the waste brokering contract, and that the alleged verbal agreement is void under the Statute of Frauds, and therefore it is entitled to judgment as a matter of law as to its claim and PennAtlantic’s counterclaim. In opposition, Penn Atlantic argues that summary judgment as to Waste Management’s claim must be denied because the amount owed under the waste brokering contract remains disputed. PennAtlantic also moves for summary judgment on its counterclaim, contending that the Statute of Frauds is inapplicable and the verbal contract is valid. Having heard the parties and examined the papers, Waste Management’s motion for summary judgment as to Count I is ALLOWED in part and DENIED in part. Both Waste Management and PennAtlantic’s motions for cross summary judgment on the counterclaim are DENIED.
BACKGROUND
Count I: Breach of Contract
Waste Management is a corporation that sells space at its landfills to waste haulers and waste brokers by charging per ton of waste. PennAtlantic’s business involves buying space at landfills and reselling that space to waste haulers at a higher price.
From June of 1998-February 1999, PennAtlantic maintained an account with Waste Management whereby PennAtlantic purchased landfill space and resold that space to third parties. Waste Management invoiced PennAtlantic on a weekly basis for those purchases. In 1998, PennAtlantic notified Waste Management of various discrepancies in Waste Management’s invoices and billing procedures. Waste Management, however, did not correct these errors.
Count I Counterclaim: Breach of Contract
PennAtlantic contends that it entered into a separate, verbal contract with Waste Management for the hauling of processed demolition material from Rhode Island to New Hampshire. According to PennAtlantic, the parties agreed to a long-term hauling contract under which PennAtlantic would be provided with 3 to 6 loads per day for a period of up to 18 months. PennAtlantic claims that because it relied on the verbal contract, it refused offers for other jobs, purchased equipment, and obtained permits totaling $190,000.00. PennAtlantic contends that Waste Management breached its obligations under the oral contract by failing to provide the contracted number of loads of material each day and by failing to pay PennAtlantic for the work performed thereunder.
Waste Management maintains that a verbal contract never existed. Alternatively, Waste Management contends that even if a verbal agreement did exist, it was an at-will contract that did not specify the amount of time or number of loads, and therefore Waste Management was not obligated to provide PennAtlantic with promised work. Waste Management further contends that it contracted with PennAtlantic to provide services as a waste broker, not as a waste hauler.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary record entitles the moving party to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community *643 Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976): Mass.R.Civ.P. 56(c). “The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law." See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “The- nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts.” See LaLonde v. Eisner, 405 Mass. 207, 209 (1989). A court may make an order of partial summary judgment if there are facts that appear without substantial controversy and then may direct further proceedings in the case as are just. See Mass.R.Civ.P. 56(d).
I. COUNT I: BREACH OF CONTRACT
Waste Management contends that under its contract with PennAtlantic for waste brokering, PennAtlantic owes $52,703.43 for unpaid invoices. PennAtlantic has conceded that it owes $30,000, but disputes the remaining $22,703.43. Specifically, PennAtlantic asserts that $10,703.43 is attributable to Waste Management’s faulty billing procedures, and $12,000.00 relates to invoices to an account identified as the “E.L. Harvey” account. During the hearing, counsel for Waste Management conceded that PennAtlantic’s liability for amount owed under the E.L. Harvey account could be in dispute.
On these facts, the court ALLOWS Waste Management’s motion for summary judgment as to the $30,000.00. What amount, if any, PennAtlantic is liable for on the remaining $22,703.43 remains for trial.
II. THE COUNTERCLAIM: BREACH OF CONTRACT (COUNT I)
A. Statute of Frauds: G.L.c. 259, §1
Under Massachusetts’ Statute of Frauds, G.L.c. 259, §1, an agreement which cannot be performed within a year must be in writing and signed by the party to be charged. See G.L.c. 259, §1. A defendant may be estopped from pleading the Statute of Frauds as a defense if a plaintiff detrimentally relied upon, or partly performed pursuant to, an oral agreement. See Nessralla v. Peck, 403 Mass. 757, 761-62 (1989). Thus, if a contract within the statute of frauds is performed or partly performed by one party, and the other party refuses to perform, an action may be “maintained by the party performing for the recovery of so much as he has expended in money in execution of the contract on his part.” See Sherburne v. Fuller, 5 Mass 133, 133 (1809); Kidder v. Hunt, 18 Mass. 328, 328 (1823).
Waste Management contends, among other things, that any verbal contract it had with PennAtlantic to perform hauling is void because it was an at-will contract that was not in writing as mandated by the Statute of Frauds. Waste Management further argues that all invoices for completed work were paid in full to PennAtlantic, and therefore there is no issue of part performance. According to PennAtlantic, the Statute of Frauds is not applicable here because (1) Waste Management has not yet fully paid for work completed by PennAtlantic: and (2) the verbal contract did not have to be in writing because it could be performed within one year.
Whether a contract satisfies the Statute of Frauds is generally a question of law for the court. See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709-10 (1992). However, the issue of part performance is a question of fact to be determined by a jury. See Murphy v. Chichetto, 323 Mass. 11, 14 (1948) (question for jury to decide whether plaintiff accepted check drawn by defendant in part payment pursuant to oral contract); Dutton v. Bennett, 256 Mass. 397, 402 (1926) (whether defendant accepted check in part payment is an issue for a jury). Because there appear to be material facts in dispute as to whether Waste Management partly performed under the terms of the alleged oral contract, it is not appropriate to decide on a motion for summary judgment whether G.L.c. 259, § 1 applies in this case.
B. Statute of Frauds: G.L.c. 259, §7
Under G.L.c. 259, §7, “any agreement to pay compensation for services as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized.” In Bay Colony Marketing Co., Inc. v. Fruit Salad, Inc., 41 Mass.App.Ct. 662, 665 (1996), the Massachusetts Appeals Court held that courts should not narrowly define “broker” when applying G.L.c. 259, §7. In that case, the court found that despite the absence of the definition of a “broker” in the statute, the Legislature did not intend to limit the applicability of the Statute of Frauds to simply brokers of loans or businesses. See id. at 666.
In the present case, Waste Management asserts that because PennAtlantic was engaged in the business of waste brokering while performing the verbal contract, G.L.c. 259, §7 applies, and the alleged oral contract is void because- it was not in writing. Waste Management directs the court’s attention to statements made by PennAtlantic’s President David J. Sullivan, Jr. (“Sullivan”) during his deposition:
Q. For what purpose was PennAtlantic established?
A. Waste brokering.
Q. Did it conduct any other activities in addition to waste brokering?
A. No.
Q. Was PennAtlantic at any point a waste hauling company or has it ever been a waste hauling company? Has PennAtlantic ever conducted waste hauling activities, truck hauling?
A. What you’re asking is difficult to answer. Penn-Atlantic arranged for the brokers of trucking. That’s *644 what we did. But we didn’t own absolutely no tractors so we couldn't be a waste hauler.
Q. So it was not a waste hauling company, it was—
A. Waste broker.
Q. —strictly waste brokering?
A. Right.
According to PennAtlantic, however, during the commission of the oral agreement, PennAtlantic acted as a waste hauler and therefore G.L.c. 259, §7 does not apply and the contract is enforceable. In support of this contention, PennAtlantic directs the court’s attention to other statements Sullivan made during his deposition:
Q. Can you.explain what the basis of PennAtlantic’s counterclaim against Waste Management is?
A. We were contacted in June of, I think it was ‘98, by Rich Nelson. And there are letters goingback and forth from me to Richard substantiating that we were going to haul X amount of this ground material up to . . . Turnkey landfill.
Q . . . You were discussing the nature of your being contacted by Rich Nelson in June of ‘98?
A . . . And I think that deal, as best I can remember, we probably hauled without problem for a week. And then the whole deal was gone. We had spent all the money for everything and they assured us it was just a small detail and everything would start up again.
Whether PennAtlantic was acting as a waste hauler or a waste broker when it performed under the terms of the alleged verbal contract is a material issue of disputed fact. The court, therefore, cannot determine the applicability of G.L.c. 259, §7, and both parties’ motions for summary judgment as to PennAtlantic’s counterclaim must be DENIED.
ORDER
For the foregoing reasons, Waste Management’s motion for summary judgment as to Count I of the Complaint is ALLOWED as to $30,000.00 and DENIED as to the remaining $22,703.43. Both Waste Management and PennAtlantic’s motions for summary judgment as to Count I of the counterclaim are DENIED.