CHRISTOPHER CANTELL & another[1] *vs.* HILL HOLLIDAY
CONNORS COSMOPULOS, INC.

No. 00-P-57.

Suffolk. April 8, 2002. - August 2, 2002.

Present: RAPOZA, MASON, & GRASSO, JJ.

*Frauds, Statute of. Statute,* Construction. *Contract,* With broker. *Broker,*
Commission. *Words,* "Broker," "Finder."

General Laws c. 259, § 7, the Statute of Frauds, operated to bar claims of
breach of contract and quantum meruit brought by an employment agency
seeking compensation for services rendered, where the services for which
the employment agency sought compensation were those of a "broker" or
a "finder," as those terms are used in the statute, and where it was
undisputed that the employment agency had no written agreement signed
by the defendant to pay for the services rendered. [552-554]
In an action brought by an employment agency seeking compensation for
services rendered (i.e., the employment agency's alleged referral to the
defendant company of a candidate for employment), the judge properly
granted summary judgment in favor of the defendant company, where the
employment agency had no reasonable expectation of proving an essential
element of its claim, namely, that it was the efficient and predominating
cause of the candidate's employment by the defendant company. [554-556]

CIVIL ACTION commenced in the Superior Court Department on
September 29, 1997.

The case was heard by *Vieri Volterra,* J., on motions for sum-
mary judgment.

*John O. Postl* for the plaintiffs.

*Bradford J. Smith* for the defendant.

GRASSO, J. We consider in this appeal the applicability of the
Statute of Frauds, G. L. c. 259, § 7, to a claim by an employ-
ment agency for services. After a hearing on cross motions for
summary judgment, a Superior Court judge granted the motion

[1]Linda Yancy Kidsley.

of the defendant, Hill Holliday Connors Cosmopulos, Inc. (HHCC), ruling that the claims of Christopher Cantell and Linda Yancy Kidsley, doing business as Cantell Communications International (CCI), for breach of contract and quantum meruit were barred by the Statute of Frauds or, alternatively, that CCI was not the efficient or predominating cause of HHCC's decision to hire CCI's former candidate. The judge also dismissed CCI's G. L. c. 93A claim of unfair business practices. We affirm.

1. *Facts.* Viewed in the light most favorable to CCI, see *Transamerica Ins. Co.* v. *KMS Patriots, L.P.*, 52 Mass. App. Ct. 189, 192 (2001), the material facts are these. In May, 1996, CCI, an employment agency, more colloquially described as a "recruiter" or "headhunter," faxed to Tom Woodard, HHCC's director of human resources, a schedule of service charges, signed by both CCI partners. The schedule stated, in part, "Your acceptance of referrals from us shall be conclusive evidence of your acceptance of our schedule of charges, terms and conditions, unless we have signed a written modification." There was no place on the document for signature signifying acceptance on behalf of HHCC, nor did Woodard sign on its behalf.

In July, 1996, CCI arranged an interview with ·Woodard for Nancy Lehrer, an employee of Holland Mark Martin advertising agency who was working with CCI to find new employment. The interview was an informal breakfast meeting, described by Lehrer as "informational," from which no follow-up meetings, interviews, or job offer ensued. In November, 1996, CCI faxed a copy of Lehrer's resume to an executive at HHCC, who informed CCI that recruitment needed to go through Rebecca Haag, the new director of human resources. CCI contacted Haag, who indicated that she was unaware of any relationship between HHCC and CCI. Haag requested that CCI furnish her with a list of the candidates that CCI maintained it had referred to HHCC. On November 22, 1996, CCI faxed HHCC another schedule of service charges, together with a memorandum listing candidates, and requested that Haag initial the memorandum. Haag did not recognize any of the individuals listed, including Lehrer, nor did she initial the memorandum. Instead, Haag informed CCI that HHCC was working with too many recruiters and was not interested in dealing with CCI.

In January, 1997, Lehrer asked a coworker, who was about to begin employment with HHCC, to inquire into whether HHCC needed anyone to work on its Fidelity Investments account. The friend gave Lehrer the name of another HHCC employee, Gina Fajardo. Lehrer sent Fajardo a copy of her resume, which Fajardo forwarded to Haag. On February 28, 1997, after a series of interviews, Lehrer was offered the position of vice-president/management supervisor for the Fidelity account. She accepted the employment offer on March 4, 1997, and began work at HHCC at the end of that month. CCI later instituted suit to recover a commission based upon its referral of Lehrer to HHCC.

2. *Applicability of the Statute of Frauds.* As set forth in G. L. c. 259, § 7, "Any agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized. . . . The provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation . . . ." CCI contends that the statute does not bar its action because an employment agency or "headhunter" is not a "broker" or "finder" within the meaning of the statute. Contrary to CCI's contention, we conclude that the services for which CCI seeks compensation are those in which it acted either as a "broker" or a "finder" as those terms are used in the statute. We conclude that CCI's contract and quantum meruit claims are thus barred by the Statute of Frauds because no contract was signed by HHCC.

The modern trend is to give statutes of frauds liberal interpretations. See 3A Singer, Sutherland Statutory Construction § 70.02, at 200 (5th ed. 1992).[2] We have followed this trend previously in concluding that the precise section at issue, G. L. c. 259, § 7, should be interpreted broadly to further its policy determination that agreements for compensation for

---

[2]"[The Statute of Frauds] is *not* in derogation of the common law, and for that reason should *not* be subjected to a restricted construction." 3A Singer, Sutherland Statutory Construction § 70.02, at 201 (5th ed. 1992) (emphasis supplied). Compare *Kerins* v. *Lima*, 425 Mass. 108, 110 (1997) (statutes in derogation of the common law should be narrowly construed).

certain services be in writing. See *Bay Colony Mktg. Co.* v. *Fruit Salad, Inc.*, 41 Mass. App. Ct. 662, 665 (1996) ("we interpret the statute to require written agreements where there is to be compensation 'for service as a broker or finder'"). Such an interpretation furthers the manifested legislative purpose "to discourage claims for commission based on conversation which persons heard differently or remembered differently." *Alexander* v. *Berman*, 29 Mass. App. Ct. 458, 462 (1990).

Further fortifying our conclusion that the statute applies to employment agencies, such as CCI, that provide broker's or finder's services are the specified exceptions from the statute's applicability for providers of services, such as attorneys, licensed real estate brokers, and real estate salesmen.[3] "The fact that the Legislature specified one exception . . . strengthens the inference that no other exception was intended." *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 620 (1997), quoting from *LaBranche* v. *A.J. Lane & Co.*, 404 Mass. 725, 729 (1989).

The terms "broker" and "finder" are not technical terms and, when given their ordinary meanings and construed according to their common usage, encompass activities performed by CCI. See G. L. c. 4, § 6, Third; *Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 880 (1984) (unless legislative use of a word indicates a specialized meaning, the Legislature is presumed to have intended the word in its ordinary sense); *Baccanti* v. *Morton*, 434 Mass. 787, 794 (2001) (where statutory language is plain and unambiguous, it is interpreted according to its ordinary meaning). A broker is "[a]n agent who acts as an intermediary or negotiator, esp[ecially] between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matters of trade, commerce, and navigation." Black's Law Dictionary 187 (7th ed. 1999). A finder is "[a]n intermediary who brings together parties for a business opportunity. . . . A finder differs from a broker-dealer because the finder merely brings two parties together to make their own contract, while a broker-dealer usu[ally] participates in the negotiations." *Id.* at 646. A finder locates, introduces, and brings

---

[3] "The provisions of this section . . . shall not apply to a contract to pay compensation for professional services of an attorney-at-law or a licensed real estate broker or real estate salesman . . . ." G. L. c. 259, § 7.

parties to a transaction together, while a broker does more, attempting to bring the parties to an agreement. See *Shinberg* v. *Bruk*, 875 F.2d 973, 978 (1st Cir. 1989).

On the undisputed facts, CCI's services are susceptible of being viewed as those of either a "broker" or a "finder" within the ambit of the statute. CCI is a "broker" because its claim for services is predicated upon its serving as an intermediary that was willing to negotiate an employment contract between Lehrer and HHCC; CCI is a "finder" because it brought Lehrer and HHCC together to form an employment agreement, and identified business opportunities for HHCC by recommending prospective employees.

As Christopher Cantell, a CCI partner, testified in his deposition, "[i]ntroduction is the business we are in. We introduce parties to each other which means representing each party, bringing them together for a scheduled appointment for the purpose of evaluating some kind of contractual relationship. It could be a contracting situation, it could be employment."[4] Because the services for which CCI seeks compensation from HHCC are those of a "broker" or "finder," and it was undisputed that CCI had no written contract signed by the party to be charged, HHCC,[5] the Statute of Frauds operates as a bar to CCI's claims for breach of contract and quantum meruit.[6]

3. *Efficient and predominating cause test.* Beyond the obstacle posed by the Statute of Frauds, CCI also had no reasonable expectation of proving an essential element of its claim, that it

---

[4]See Black's Law Dictionary 545 (7th ed. 1999) (cross-referencing the definition of "employment agency" to the definition of "finder").

[5]Neither Woodard, nor Haag, nor any other person authorized by HHCC ever signed the schedule of service charges or promised to pay CCI a commission for its services. The statement in the schedule that "acceptance of referrals from us shall be conclusive evidence of your acceptance of our schedule of charges" does not obviate the statutory requirement that the writing be "signed" by the party to be charged.

[6]Because G. L. c. 259, § 7, applies to a contract implied in fact or in law, the statute also precludes recovery on any claim based on a contract implied in law, including recovery in quantum meruit. See *Bolen* v. *Paragon Plastics, Inc.*, 747 F. Supp. 103, 106 (D. Mass. 1990) (Massachusetts treats claims for quantum meruit, quasi contract and implied contract as having the same elements). See also *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985); 1 Corbin, Contracts § 1.20 (rev. ed. 1993).

was the efficient and predominating cause of Lehrer's employment at HHCC. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991); *Massachusetts Mun. Wholesale Elec. Co.* v. *Springfield*, 49 Mass. App. Ct. 108, 109 (2000). Absent a written agreement to the contrary, a real estate broker is entitled to a commission only if the broker is the efficient and predominating cause of subsequent transaction between the parties. See *Julius Tofias & Co.* v. *John B. Stetson Co.*, 19 Mass. App. Ct. 392, 395 (1985), citing *Kacavas* v. *Diamond*, 303 Mass. 88, 91 (1939). See also *Sampson* v. *Eaton Corp.*, 809 F.2d 156, 159 (1st Cir. 1987). Mere introduction of a prospect to a property does not earn a broker's commission. See *Bonin* v. *Chestnut Hill Towers Realty Co.*, 14 Mass. App. Ct. 63, 69 (1982), *S.C.*, 392 Mass. 58 (1984), citing *Whitcomb* v. *Bacon*, 170 Mass. 479, 481 (1898). See also *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 815 F.2d 142, 152 (1st Cir. 1987) (determination of the connection between the final transaction and the activities of a broker or finder is a factual, rather than a legal, matter). Compare *Upper Cape Realty Corp.* v. *Morris*, 53 Mass. App. Ct. 53, 59 (2001) (the word "introduce" in an extension clause of a written brokerage agreement did not require the broker to be the predominant cause of a sale).

Upon the undisputed material facts viewed in the light most favorable to CCI, HHCC established that CCI would not be able to prove that it was the efficient and predominating cause of HHCC's decision to hire Lehrer. Beyond the introduction of Lehrer to Woodard in July and the fact of Lehrer's subsequent employment by HHCC through her own efforts nine months later, there was nothing to establish a causal connection, let alone that CCI's services were the efficient and predominating cause of Lehrer's employment by HHCC. To the contrary, the July, 1996, interview was an informal, informational meeting, with no job offer or promise of future prospect for Lehrer. Fidelity, the client for which Lehrer was eventually hired, was not even an HHCC account at that time. Woodard, the original interviewer, left HHCC four months prior to Lehrer's subsequent interviews with HHCC; and Haag, the new human resources director, was not even aware of Lehrer or a relationship with CCI. Moreover, Lehrer procured her 1997 interview at HHCC

by contacting people on her own. Upon these facts, CCI could not reasonably be found to be the efficient and predominating cause of HHCC's decision to hire Lehrer.

4. *Chapter 93A claim for unfair business practices.* Since CCI's G. L. c. 93A claim is derivative of its breach of contract and quantum meruit claims, that claim was properly dismissed. See *Duclersaint* v. *Federal Natl. Mort. Assn.*, 427 Mass. 809, 814 (1998) ("a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made").[7]

*Judgment affirmed.*

---

[7]Moreover, CCI omitted consideration of the dismissal of its G. L. c. 93A claim from its brief, addressing it for the first time in its reply brief. Such consideration does not rise to the level of adequate appellate argument and is therefore not properly before us. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); Mass.R.A.P. 16(c), as amended, 399 Mass. 1217 (1987); *Leigh* v. *Board of Registration in Nursing*, 395 Mass. 670, 684 n.14 (1985) (an issue may not be presented for the first time in a reply brief).