Mike Glynn & Company *vs.* Hy-Brasil Restaurants, Inc., & another.[1]

No. 08-P-303.

Suffolk. March 11, 2009. - September 30, 2009.

Present: Graham, Dreben, & Sikora, JJ.

*Contract,* Performance and breach, Subcontract. *Damages,* Quantum meruit, Breach of contract, Restitution. *Frauds, Statute of. Restitution.*

This court concluded that the Statute of Frauds did not bar a civil action in which the plaintiff subcontractor sought damages from a corporate restaurant owner and its president for services the plaintiff provided after the general contractor committed a breach of the subcontract, where, as to a claim of an alleged oral contract, the consideration for the promise was in fact mainly for the restaurant owner's own economic advantage, rather than for the benefit of the general contractor, and where the Statute of Frauds did not bar a claim for quantum meruit. [324-325]

In a jury-waived civil action in which the plaintiff subcontractor sought damages from a corporate restaurant owner and its president for services the plaintiff provided after the general contractor committed a breach of the subcontract, the evidence was sufficient to support the judge's findings that the defendants benefited from the plaintiff's work sufficiently to hold them jointly and severally liable on the basis of quantum meruit, and that the defendants failed in their burden of showing that they had paid the general contractor for the plaintiff's services [325-328]; further, the evidence warranted the judge's finding that the corporation's president could be held individually liable [328-329]; however, this court reduced the award by the amount of unpaid invoices incurred before the defendants induced the plaintiff to stay on the job after the general contractor's breach [329].

Civil action commenced in the Superior Court Department on March 5, 1999.

The case was heard by *John C. Cratsley,* J.

*Brian M. McMahon* for the defendants.

*John P. Connelly* for the plaintiff.

Dreben, J. This is an appeal by Hy-Brasil Restaurants, Inc. (Hy-Brasil), and Liam Tiernan (Tiernan) from a judgment entered after a jury-waived trial that held both defendants jointly and

[1]Liam Tiernan.

severally liable on the basis of quantum meruit[2] to pay the plaintiff-subcontractor for its services. We affirm with a slight modification.

*Background.* We take our facts from the findings of the trial judge, adding a few undisputed details from the record. Hy-Brasil rents property at 99 Broad Street in Boston, where it operates a restaurant and bar. Tiernan is the president of the defendant corporation. The other officers at the relevant time period were Tiernan's wife, Susan Tiernan, and Michael Sherlock, who was subsequently removed after a quarrel with Tiernan. In 1996, Hy-Brasil entered into a contract with Howell Management (Howell) for the construction of a restaurant and bar on the property, and in September, 1996, the plaintiff, Mike Glynn & Company (Glynn),[3] entered into a subcontract with Howell to do the plumbing, heating, and air conditioning work.[4] Michael Glynn had known Tiernan and Sherlock for over thirty years, and Tiernan acknowledged that "in some way [he was] part of [the] decision" of having Glynn chosen as subcontractor. On October 27, 1996, Howell committed a breach of its contract with the plaintiff by failing to pay an invoice in full within ten days.[5]

The evidence was conflicting as to what happened thereafter. Glynn claimed that after his workers threatened to leave, Tiernan told him that it was most important that the job be finished before the holidays and promised Glynn that either Tiernan personally, or Hy-Brasil, would pay him if he completed the job. Tiernan denied having had this conversation with Glynn. Although the judge concluded that there was no written or oral contract between the plaintiff and the defendants, he made the following findings:

"This court is satisfied that in performing the construction

---

[2]In its complaint, the plaintiff also claimed breach of contract, unjust enrichment, and unfair and deceptive trade practices. The judge found for the defendants on those claims.

[3]We use "Glynn" to refer both to the plaintiff and to Michael Glynn individually.

[4]A separate contract was entered into between Howell and the owner of the building for certain renovations. Glynn's contract with Howell covered both the work for the owner and for Hy-Brasil.

[5]A memorandum offered at trial by Hy-Brasil and Tiernan indicates that Howell went into bankruptcy.

work on the restaurant, Glynn expected compensation in return for his services. Whether he expected to be paid specifically by Hy-Brasil and Tiernan remains an open question. This Court has concluded that there was no written or oral contract between the plaintiff and defendants in this case, and must use additional evidence to decide this issue. While it is disputed whether any express agreement was made, it is uncontested that the defendant accepted the services of the plaintiff with knowledge that the plaintiff expected to be paid by someone.

"The plaintiff contends that when Howell breached their initial contract, the plaintiff was prepared to walk off the job. Not only did Glynn then stay on the job; he hired additional workers, worked overtime, and focused almost entirely on the restaurant to complete it in time for the holiday season. Rather than leave the job with five thousand dollars in damages, Glynn stayed on the site and performed forty-two thousand dollars worth of work. This Court concludes that Glynn incurred an additional eight times the amount of damages as a result of some motivation from the defendants, who were the direct beneficiaries of the completion of the project.[6] It is significant to this Court that the parties involved knew each other for over thirty years, as the 'trier must consider all relevant circumstances including the situation and the *relationship* of the parties.' " (Citation omitted.)

Although the defendants claimed they had paid Howell for work performed by Glynn, the defendants' payments to Howell were not itemized, and the defendants offered no specific evidence that any such payments were for work performed by Glynn. At the time of trial Howell and Hy-Brasil were disputing a $69,164 balance on their contract in an independent action. The judge also found that the defendants

"accepted the fruits of Glynn's labor without any showing that they made payments to anyone for these services. All of these inferences surrounding the actions of the parties after Howell stopped paying Glynn favor the plaintiff."

*Discussion.* 1. The defendants first argue that the plaintiff's

---

[6]The amount of the plaintiff's unpaid invoices submitted to Howell for work it performed on the restaurant portion of the property was $42,350.

claim is barred by the Statute of Frauds, that, in substance, Tiernan acted as surety for Howell's performance of its obligations to Glynn. As the trial judge pointed out, even on the alleged oral contract claim, the argument is without merit as the "main purpose" exception to the Statute of Frauds would apply here. The "consideration for the promise [was] in fact . . . mainly for [the defendants'] own economic advantage, rather than in order to benefit [Howell]." *Barboza* v. *Liberty Contractors Co.*, 18 Mass. App. Ct. 971, 972 (1984), quoting from Restatement (Second) of Contracts § 116 (1979). Moreover, a claim for quantum meruit is not barred by the Statute of Frauds; indeed, often the reason recovery in quantum meruit is allowed is because an oral contract is unenforceable by reason of the Statute of Frauds.[7] See *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27, 35 (1980); 10 Williston, Contracts § 27.23, at 228 (Lord 4th ed. 1999).

2. In a diffuse argument, the defendants challenge the judge's finding that they benefited from the work, claiming rather that Glynn was bound by his contract with Howell to finish before Thanksgiving, that he failed to do so, and that the defendants suffered damages as a result of the delay. They claim that no equities favor Glynn and that its sole remedy, not having filed a mechanics' lien, is against Howell.[8]

Our review of the findings of the trial judge is governed by Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996), which provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the

---

[7]Contrast G. L. c. 259, § 7, inserted by St. 1984, c. 321, governing agreements to pay compensation for services of a broker or finder, which explicitly states, "The provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation . . . ."

[8]The mechanics' lien argument does not appear to have been raised at trial. We note that Restatement (Third) of Restitution & Unjust Enrichment § 29 comment d (Tentative Draft No. 3, 2004) (Tentative Draft) points out that the potential for unjust enrichment explains, in part at least, the widespread availability of mechanics' liens. According to comment d, a majority of courts do not bar recovery because of a failure to file a lien. Most significant for purposes of this decision is that this was not the ordinary situation, but rather one in which the defendants "motivated" — that is, induced — the plaintiff to continue its work.

witnesses." Although the record contains some evidence favoring the defendants, e.g., that Glynn kept sending its invoices to Howell even after Howell ceased to pay, our review of the entire record does not lead us to conclude that the judge's findings are clearly erroneous.[9] To the contrary, they are supported by the evidence and do not leave us "with the definite and firm conviction that a mistake has been committed." *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 792 (1986), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Before discussing the reasons why we consider recovery appropriate in this case, we note that although the trial judge distinguished the plaintiff's claim for unjust enrichment from that of quantum meruit, the terms are not as separate as he suggests (see note 2, *supra*). In the oft-cited case of *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985) (*Salamon*), the court stated:

> "A quasi contract or a contract implied in law is an obligation created by law 'for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent . . . . [C]onsiderations of equity and morality play a large part . . . in constructing a quasi-contract . . . .' 1 A. Corbin, Contracts § 19 (1963).[10] It 'is not really a contract, but a legal obligation closely akin to a duty to make restitution.' *Bloomgarden* v. *Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973). 'A person who has been unjustly enriched at the expense of another is required to make restitution to the other.' Restatement of Restitution, § 1 (1937). The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party."

See *Cantell* v. *Hill Holliday Connors Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 554 n.6 (2002). See also 1 Farnsworth, Contracts § 2.20 (3d ed. 2004), discussing the historical roots of the various terms.

---

[9]Submission by the subcontractor of invoices to the general contractor is not dispositive. *Maynard* v. *Fabyan*, 267 Mass. 312, 316 (1929). *W.W. Britton Inc.* v. *S.M. Hill Co.*, 327 Mass. 335, 336 (1951).

[10]Section 1.20 of the 1993 edition of Corbin is to the same effect. 1 Corbin, Contracts § 1.20, at 66 (rev. ed. 1993).

We turn next to one of the leading cases discussing the requirements of a quantum meruit claim. In *LaChance* v. *Rigoli*, 325 Mass. 425 (1950) (*LaChance*), the tenants of a gasoline filling station owned by the defendant Cyr Oil Co. contracted in writing with the plaintiffs, who were builders, for the construction of an addition to the filling station. *Id.* at 425. The builders sought to recover from the owner as well as from the tenants. *Ibid.* Although the owner was aware of the negotiations, had provided plans and a hoist, and had agreed to furnish heating equipment in the building, the owner was held not liable because the builders were never given to understand from the owner that it was to be held liable. *Id.* at 426. The plaintiffs never expected payments from the owner, but relied on the tenants' promise of payment upon obtaining a mortgage loan. *Id.* at 427. Citing *Farquhar* v. *Brown*, 132 Mass. 340 (1882), a case holding a landowner who contracted to have a building erected on his land not liable when the contractor failed to pay the subcontractor, the court in *LaChance* held that the "contracting party must look for payment to the one to whom credit was extended when the work was done, that is, the one who was expected to pay and who in fact expected to pay or as a reasonable man should have expected to pay. See Restatement: Restitution, § 110." *LaChance, supra.* See *W.W. Britton, Inc.* v. *S.M. Hill Co.*, 327 Mass. 335, 337 (1951); *LiDonni, Inc.* v. *Hart*, 355 Mass. 580, 583 (1969), both indicating that liability rests on the person to whom credit was extended when the work was done.

Although the judge in his memorandum of decision stated that whether Glynn expected to be paid by Hy-Brasil and Tiernan "remains an open question," we consider his statement that he "must use additional evidence to decide this issue" as referring to "the open question." His subsequent discussion is a resolution of that question — because of the "motivation" and "encouragement" by the defendants, Glynn reasonably expected the defendants to pay for the work he performed after Howell failed to pay. This is consistent with *LaChance* and *Salamon, supra.* See *Douillette* v. *Parmenter*, 335 Mass. 305, 307 (1957) (evidence sufficient to show defendant induced plaintiff to build house on her land). Cf. *Maynard* v. *Fabyan*, 267 Mass. 312, 316 (1929) (liability based on theory of undisclosed principal); *Superior Glass Co.* v. *First Bristol County Natl. Bank*, 380 Mass. 829,

833-834 (1980) (bank that was both project owner and creditor and had lulled subcontractors into assumption that their creditor positions were protected was required to disgorge payment it had unjustly received as creditor).

The general rule stated in our cases is that "[i]n the absence of a lien perfected under G. L. c. 254, an owner [including a tenant] who enters into a general contract for improvements on real property is not ordinarily liable to subcontractors whose sole contractual arrangements are with the general contractor." *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 740 (1991). *Brick Constr. Corp.* v. *CEI Dev. Corp.*, 46 Mass. App. Ct. 837, 840 (1999). As previously indicated, see note 8, *supra*, the defendants, not having brought up the issue of the mechanics' lien at trial, may not now raise it on appeal. Moreover, the judge found, and his finding was supported by the evidence, that the defendants exerted sufficient "motivation" to the plaintiff to hold them liable. The general rule is, therefore, not applicable.

The judge was also warranted in finding that the defendants failed in their burden of showing that they had paid Howell for Glynn's services. See *Merrill* v. *Kirkland Constr. Co.*, 365 Mass. 110, 114 (1974) (in action by carrier against contractor, if overpayment by contractor to bankrupt subcontractor was material to carrier's rights, contractor failed to make such showing). See also Restatement (Third) of Restitution & Unjust Enrichment § 29 comment b (Tentative Draft No. 3, 2004) (Tentative Draft), indicating that payment by the owner to the contractor is a defense to the subcontractor's action against the owner.

3. Tiernan claims he cannot be held individually liable. The evidence, however, including the relationship of the parties,[11] warranted the judge's finding of liability on the part of Tiernan as well as the corporation.

> "In the absence of an express agreement, a contract implied in fact may be found to exist from the conduct and relations of the parties. . . . An individual can be liable under an implied contract if he is the one 'to whom credit was extended when the work was done, that is, the one who

---

[11]The parties knew each other for over thirty years, and Tiernan was instrumental in the hiring of Glynn.

was expected to pay and who in fact expected to pay or as a reasonable man should have expected to pay.' *LaChance* v. *Rigoli*, 325 Mass. 425, 427. Although the bills had not been sent to the individual defendants . . . the payments by the corporations did not necessarily isolate the individual defendant[] from liability. . . . The findings concerning the individual defendant['s] conduct toward the plaintiff tend to show that [he was] not acting as mere agent[] of the corporation[]."

*LiDonni, Inc.* v. *Hart*, 355 Mass. at 583.

In sum, we consider the judge correct in concluding that the plaintiff expected the defendants to pay and that the defendants reasonably should have expected to pay for the plaintiff's work. However, our cases only permit recovery from those to whom credit was extended when the work was done. Since the trial judge found that Glynn had already incurred $5,000 of unpaid invoices before being induced to stay on the job by the defendants, the award of damages must be reduced by that figure. As so reduced, the judgment is affirmed.

Our decision is based on present Massachusetts case law, which often cites the first Restatement of Restitution (1937). We note that the result we have arrived at here (except for the subtraction of $5,000) is more easily reached under the black letter Tentative Draft § 29 set out in the margin.[12] See also

---

[12] "§ 29. Performance of Contract with Third Person

"(1) A person who has conferred a benefit on a recipient as the performance of a contract with a third person is entitled to restitution from the recipient upon the failure of performance by the third person, but only as necessary to prevent unjust enrichment. In this context, the conclusion that a recipient would be unjustly enriched by the retention of a given benefit requires a determination that

"(a) absent liability in restitution, the claimant will not be compensated for the performance in question, and the recipient will retain the benefit of the claimant's performance free of any liability to pay for it;

"(b) liability in restitution will not subject the recipient to an obligation from which it was understood by the parties that the recipient would be free; and

"(c) liability in restitution will not subject the recipient to a forced exchange.

"(2) Restitution as authorized by subsection (1) may be qualified or withheld if recovery would conflict with a system of priorities, established by

comment a, and illustrations 1 and 2. Of interest is the following comment in the Reporter's Note to that draft, at 62:

"[Where there is] a claim against a defendant who stands to retain the performance for which he contracted, and without paying anybody for it — denial of restitution is today a distinct rarity. Concededly, there remain jurisdictions in which the subcontractor's claim will be rejected out of hand. A decision like that in *Henning* v. *Security Bank,* 564 N.W.2d 398 (Iowa 1997), may still state baldly that a subcontractor not in privity with the owner can recover only by enforcement of a mechanic's lien. But the lingering impression that unpaid subcontractors not in privity can rarely recover in restitution no longer reflects the tendency of the decisions."[13]

As modified herein, the judgment is affirmed.

*So ordered.*

---

other law, ordering claims against the third person, the recipient, or the assets of either."

[13]The following cases, among others, allow unpaid furnishers of labor and materials to recover from property owners not in privity of contract with them: *Flooring Sys., Inc.* v. *Radisson Group, Inc.,* 160 Ariz. 224, 227 (1989); *Ayotte Bros. Constr. Co.* v. *Finney,* 42 Conn. App. 578, 581-582 (1996) (subcontractor with invalid lien entitled to quasi contractual recovery); *Zalay* v. *Ace Cabinets of Clearwater, Inc.,* 700 So. 2d 15, 18 (Fla. Dist. Ct. App. 1997) (subcontractor with invalid lien entitled to quasi contractual recovery); *Idaho Lumber, Inc.* v. *Buck,* 109 Idaho 737, 743, 747 (Ct. App. 1985) (contractor with unenforceable lien entitled to quasi contractual recovery); *Ontiveros Insulation Co.* v. *Sanchez,* 129 N.M. 200, 202, 206 (Ct. App. 2000) (subcontractors with unenforceable liens entitled to quasi contractual recovery); *Paschall's, Inc.* v. *Dozier,* 219 Tenn. 45, 50, 57 (1966) (furnisher of labor and materials with invalid lien entitled to quasi contractual recovery). See Tentative Draft § 29 Reporter's Note at 63. Compare *id.* at 61, where recovery is denied when owner has already paid price fixed in contract to another party. See generally Annot., Building and Construction Contracts: Rights of Subcontractor Who Has Dealt Only with Primary Contractor to Recover against Property Owner in Quasi Contract, 62 A.L.R.3d 288, 295-297 (1975 & Supp. 2009).