Per Curiam.
The plaintiff, Tufts University Cummings School of Veterinary Medicine (‘Tufts”), commenced this action to recover the unpaid balance of its veterinary hospital charges for its treatment of defendant Elliott Saffran’s (“Saffran”) horse. The jury returned a verdict in favor of Tufts for the full amount of Saffran’s unpaid bill, plus interest. Saffran filed this appeal. There was no error.
The unrefuted evidence in the record before us indicates that Saffran’s horse, Quincy, was brought to Tufts’ Hospital for Large Animals on September 25,2007 for emergency treatment. The 29 year old horse was dehydrated, emaciated, covered with skin sores, suffering from a serious systemic infection, and so critically ill that she was unable to walk or even stand. Tufts gave Saffran an initial estimate of $3,000.00 for Quincy’s treatment. At Tufts’ request, based on its customary policy, Saffran paid half of that amount, $1,500.00, at the time of Quincy’s admission to the hospital that day. Saffran also signed Tufts’ standard consent-for-treatment form, which included his consent to all “further or additional” reasonable care “without an opportunity for further discussion.”
Despite that contract language, Tufts did provide Saffran with a revised estimate of veterinary costs. On September 27, 2011, only two days after Quincy’s hospital admission, a treating veterinarian, Dr. Mazan, prepared a revised statement that costs for Quincy for the first five to seven days would total $4,500.00 to $5,000.00, and would be $400.00 per day for care beyond that initial period. Dr. Mazan informed Saffran of the revised estimate that day, and also mailed a copy to him. In a telephone conversation with Saffran shortly thereafter, Dr. Mazan opined that because of Quincy’s age, critical condition, and failure to respond to treatment up to that point, humane euthanasia of the suffering horse should be considered. Saffran responded that he had received the revised estimate of veterinary costs, and insisted that Tufts continue treating Quincy.
After almost three weeks of extensive inpatient care, Quincy was sufficiently restored to health to be discharged from the hospital on October 14,2007. At no time between September 25 and October 14, 2007, did Saffran remove, or request to remove, Quincy from Tufts’ hospital; order Tufts to stop, or even modify, treatment; or question any treatment, or its cost. Saffran refused, however, to pay the balance he owed for Quincy’s care. Tufts commenced this action against him in two counts for breach of contract and in quantum meruit.
The case was tried to a jury. Tufts’ witnesses, Dr. Mann and one Mary Misterka, an assistant in Tufts’ accounting department, testified, respectively, as to the treatment and care of Quincy, Saffran’s consent to the same, and Tufts’ billing procedures for all services provided. The consent form signed by Saffran, the revised estimate of costs he acknowledged receiving, and the treatment and billing records for Quincy were admitted into evidence. Saffran, appearing pro se, did not introduce any evidence, did not testify, and did not call any witness on his list. He did call one wit *113 ness on Tufts’ list whom he noticed sifting in the court room, but failed to pose any question that elicited relevant testimony. As noted, the jury returned a general verdict in favor of Tufts for the full $5,874.05 amount sought.
Saffran’s superficial brief on this appeal consists of a list of issues not properly raised or preserved for appeal in the trial court, conclusory allegations of legal error not substantiated by the record, and general misrepresentations of the facts established by the uncontroverted evidence adduced at trial. The brief falls well short of acceptable appellate argument, and does not merit or require extended comment. See Weinstein v. Steigman, 1983 Mass. App. Div. 288, 290.
1. It is sufficient to note, first, that Saffran is not entitled to appellate review of his allegation that the trial judge failed to instruct the jury properly on the formation and existence of a binding contract and on quantum meruit. Rule 51(b) of the Mass. R. Civ. P. clearly states that “[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.” As the trial transcript in this case reveals, Saffran failed to make any objection to the judge’s jury charges, and thereby forfeited any appellate consideration of, or relief from, those instructions. Rader v. Odermatt, 2008 Mass. App. Div. 154, 155; Jenkins v. Ellis, 2008 Mass. App. Div. 109, 111.[3]
2. Second, Saffran failed to file a timely Mass. R. Civ. P., Rule 50(b) motion for a directed verdict and is, therefore, “barred from challenging the sufficiency of the evidence” to permit the jury’s verdict in favor of Tufts. Bolton v. Massachusetts Bay Transp. Auth., 32 Mass. App. Ct. 654, 657 (1992). See also International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 846 (1983); Hatton v. Meade, 23 Mass. App. Ct. 356, 361-362 (1987). Moreover, even if he had preserved the issue, Saffran’s argument as to the insufficiency of the evidence is his utterly frivolous assertion that there was no binding contract between the parties because they never proceeded past the negotiations stage. As Saffran acknowledged in his own opening statement, a contract was created upon Saffran’s signature of Tufts’ consent form. Further, Dr. Mazan’s provision of a revised estimate of costs two days later, Saffran’s admitted receipt of that second estimate, and his request that Tufts continue treatment of Quincy unquestionably constituted the offer, acceptance, and mutual assent to material terms sufficient to bind Saffran contractually to pay Tufts’ veterinary hospital charges. See generally I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 455 (2004).[4]
Saffran’s argument that no binding contract was ever formed also ignores the obvious point that even in the absence of an enforceable contract, the jury’s general verdict for Tufts would have been warranted on Tufts’ alternative claim for recovery *114 in quantum meruit. Saffran’s frivolous claim of a lack of consent in incurring his indebtedness to Tufts would not have been determinative of Tufts’ quantum meruit claim.
A quasi contract or a contract implied in law is an obligation created by law “for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.... [Considerations of equity and morality play a large part... in construing a quasi-contract....” It “is not really a contract, but a legal obligation closely akin to a duty to make restitution.” “A person who has been unjustly enriched at the expense of another is required to make restitution to the other.” The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party (citations omitted).
Mike Glynn & Co. v. Hy-Brasil Restaurants, Inc., 75 Mass. App. Ct. 322, 326 (2009), quoting Salamon v. Terra, 394 Mass. 857, 859 (1985). Thus, where “one party has conferred a benefit upon another with the expectation of payment, and the receiving party accepts that benefit also with knowledge and an expectation of payment,” JML Care Ctr., Inc. v. Bishop, 2004 Mass. App. Div. 63, 65, quantum meruit is the remedy in the absence of an express contract; it is “the extent of the restitution that must be made to restore to the plaintiff the reasonable value of the services and materials the defendant has received.” Wendt v. Barnum, 2007 Mass. App. Div. 93, 96.
3. Finally, the record does not support Saffran’s remaining contention that he was denied a fair trial because the trial judge limited his cross-examination of witnesses and “commented within the hearing of the jury on the futility of such cross-examination.” Instead, what the transcript does disclose is that the trial judge steadfastly endeavored to meet his duty of directing the proper course of this trial, Commonwealth v. Campbell, 371 Mass. 40, 45 (1976); Turesky v. Carp, 1993 Mass. App. Div. 141, 143-144, that was constantly interrupted and inexcusably prolonged by Saffran’s conduct.
Saffran’s questions to the witnesses were unfocused, rambling, improper in form, often directed to wholly immaterial matters, and repetitive. Saffran objected to the witnesses’ answers to his own questions, repeatedly misstated those answers, or expressed his opinion as to their credibility or accuracy. This and other continuing behavior by Saffran throughout the trial necessitated at least a dozen sidebar conferences, often at Saffran’s request, during which the judge attempted to assist, instruct, or correct Saffran. The witness was asked to step down each time, and the judge cautioned Saffran more than once to lower his voice to keep the discussion away from the jury. Saffran’s continued disregard of the judge’s instructions or rulings also required the judge to have the jury removed from the court room at three additional times to enable him to address at length the problems Saffran was creating.[5] The few comments the judge did make in front of the jury were proper exercis *115 es of his discretion to “focus the examination of witnesses, narrow the issues, develop reliable testimony, or simply move the proceedings along.” Porter v. Metrowest Automotive Resources, Inc., 2000 Mass. App. Div. 129, 131. The remarks did not exceed “a show of evanescent irritation — a modicum of quick temper that must be allowed even judges.” Commonwealth v. Meadows, 33 Mass. App. Ct. 534, 536 (1992), quoting Offutt v. United States, 348 U.S. 11, 17 (1954).
Judgment affirmed.
So ordered.

 In any event, the instructions given were correct statements of law and generally covered Tufts’ breach of contract and quantum meruit claims.

 It is unnecessary to address the single-sentence conclusory allegations in Saffran’s brief that Tufts’ recovery for his breach of contract is precluded by Tufts’ negligence or by violations of its contractual duties of good faith and fair dealing. See generally Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 396 n.6 (1991), S.C., 412 Mass. 703 (1992). Saffran failed to present even a scintilla of evidence at trial on these alleged defenses.

 After repeated warnings to Saffran, the judge eventually imposed monetary sanctions on him. There is nothing in the record indicating that Saffran ever paid those sanctions; and he has not argued, or even referenced, them on this appeal.