Ullmann, Robert L., J.
The pending motion presents core issues under G.L.c. 259, §7, a Statute of Frauds provision that requires a signed contract for most agreements to compensate “brokers” and “finders” for services. Plaintiff Spectrum Sales, Inc. (“Spectrum”) has asserted claims of quantum meruit, promissory estoppel, and violation of G.L.c. 93A against defendant Cobham Defense Electronic Systems Corporation (“Cobham”), based on Cobham’s alleged failure to pay Spectrum commissions on sales of Cobham products after Spectrum’s written contract with Cobham expired. Cobham argues that Spectrum is a hybrid of a “broker” and “finder” for purposes of G.L.c. 259, §7, and that Spectrum does not fall under any of the limited exceptions to the Statute of Frauds.
This Court held a hearing on February 3, 2014. For the below reasons, defendant Cobham’s Motion For Judgment On The Pleadings (pleading #4) is DENIED.
FACTUAL ALLEGATIONS
From 1990 through 2008, Spectrum served as Cobham’s sales representative in certain defined geographic territories. (Complaint ¶¶9-11, 14.) The parties had a written contract (the “1990 Agreement”) under which Spectrum, as its sole compensation from Cobham, received a commission on sales of most Cobham products in Spectrum’s sales territory. (Id., ¶¶10, 11, 14.) In 2009, the parties signed a new “Sales Representative Agreement” (the “2009 Agreement”), which replaced the 1990 Agreement. (Id., ¶18 and Exhibit A.) The 2009 Agreement applied to all of Cobham’s divisions that are relevant to this case. (See id., ¶20.)
In late 2010, Cobham notified Spectrum that it would be replacing the 2009 Agreement with new “Adviser Agreements” that were specific to each Cobham division. (Id., ¶27.) To that end, Cobham notified Spectrum that it would terminate the 2009 Agreement on December 31, 2010. (Id., ¶28.) Cobham vice president Mark Fourier (“Fourier”) extended that termination date twice, to March 31, 2011 and then June 30, 2011. (Id., !¶29, 31 and Exhibits B and C.)
On June 30, 2011, Fourier informed Spectrum by email that he could not give any further extensions of the contract, but that he had “instructed the [Cobham] businesses to continue to work with [Spectrum] and document all post contract orders until I can reinstate your new contracts. I believe . . . within the next several weeks I will have you all under contract.” (Id., ¶35 and Exhibit D.) On July 1, 2011, Fournier wrote to Spectrum, providing formal notice of the termination of the 2009 Agreement. (Id., ¶37 and Exhibit E.) In the same letter, Fournier represented that Cobham anticipated executing a new “Advisor Agreement” with Spectrum and invited Spectrum to continue its work *110 on behalf of Cobham during the post-contract period. (Id.)
On September 14, 2011, Cobham’s vice president of finance Sally Dudash (“Dudash”) notified Spectrum in writing that “unless and until a contract is entered into between us and you that you should not undertake any activity on our behalf.” (Id., ¶41.) In response to this letter, Spectrum reached out to the senior sales executives at Cobham with whom it had been dealing to address Dudash’s instructions. (Id., ¶43.) These senior sales executives told Spectrum to keep working and assured Spectrum that it would be paid for its services. (Id., ¶44.) Spectrum continued to do extensive work on sales of Cobham products, including products sold by Cobham’s NURAD and M/A-Com divisions, and components of the Integrated Defense Electronic Counter Measures (“IDECM”) program. (Id., ¶¶45, 46, 52, 53-58.)
On February 17, 2012, Spectrum and Cobham entered into an Advisor Agreement with respect to Cobham’s NURAD division (the “NURAD Advisor Agreement”). (Id., ¶49.) On July 12, 2012, Cobham informed Spectrum that it was no longer pursuing any additional Advisor Agreements with Spectrum. (Id., ¶68 and Exhibit F.)
Cobham has not paid Spectrum any commissions on sales of NURAD division products made between July 1, 2011 and the February 17, 2012 commencement date of the NURAD Adviser Agreement; nor has Cobham compensated Spectrum for sales of M/A-Com products and IDECM components made between July 1, 2011 and July 12, 2012. (Id., M72-74.)
Spectrum alleges that the above-noted allegations give rise to claims of quantum meruit and promissory estoppel. (Id., ¶¶75-84.) Spectrum further alleges that Cobham has engaged in unfair and deceptive business practices by demanding that Spectrum dramatically cut its commissions on future sales as a condition of Cobham compromising its position as to the commissions that Spectrum claims it is owed. (Id., ¶¶65-66, 85-90.)
DISCUSSION
A. Legal Standard
A motion to dismiss, or motion for judgment on the pleadings, “argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002) (internal citations omitted). In considering such a motion, the Court takes as true the allegations of the complaint, as well as such inferences as may be drawn from them in favor of the non-moving party. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). However, the court disregards legal conclusions cast in the form of factual allegations. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). To survive the motion, the complaint must contain “allegations plausibly suggesting (not merely consistent with)” an entitlement to relief, and “must be enough to raise a right to relief above the speculative level.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).
B. Application of the Legal Standard
1. Spectrum Was Not a “Broker” or “Finder” for Purposes of G.L.c. 259, §7
General Laws c. 259, §7 (inserted by St. 1984, c. 321) provides in relevant part:
Any agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized.
If Spectrum was a “broker” or “finder” for purposes of G.L.c. 259, §7, it was required to have a written contract with Cobham in order to recover compensation for its services, unless it fell within an exception to the statute. The Court has focused on Cobham’s claim that Spectrum was a “broker” for purposes of G.L.c. 259, §7, which is more plausible than the argument that Spectrum was a “finder.”
Although the difference between being a “broker” and being a “sales representative” is not always clear, the terms are not synonyms.[2] Indeed, the Legislature distinguishes between “broker” and “salesman” in the licensing of real estate professionals, and imposes separate requirements upon them. See G.L.c. 112, §§87PP, 87QQ, 87RR. If the Legislature had intended to sweep the broad category of all sales representatives within the scope of G.L.c. 259, §7, it would have added the words “sales representative” to the words “broker” and “finder” in the statute. Therefore the Court rejects Cobham’s implicit argument that sales representatives are necessarily “brokers” for purposes of G.L.c. 259, §7.
In deciding whether Spectrum should be treated as a broker for purposes of G.L.c. 259, §7, the Court also looks to the purpose of the Statute of Frauds. This Court cannot improve upon Justice Kass’s description, in Pappas Indus. Parks v. Psarros, 24 Mass.App.Ct. 596 (1987), of the purpose of the Statute of Frauds:
It is the purpose of the Statute of Frauds to suppress fraud, i.e., cooked up claims of agreement, sometimes fathered by wish, sometimes imagined in the light of subsequent events, and sometimes simply conjured up.
Id. at 598 (internal citation omitted). Applying the Statute of Frauds may create some degree of harshness in a particular case, but in the long run it promotes the use of written agreements that are far less susceptible of “cooked up,” “imagined” and “conjured” claims.
Cantell v. Hill Holliday Connors, 55 Mass.App.Ct. 550 (2002), relied upon by Cobham in this case, involved a fact pattern in the heartland of the statute’s *111 intended reach. The plaintiff was a self-described “headhunter” company, finding employees for certain positions, and one of its partners had testified that it was in the business of introducing parties to each other and bringing them together to negotiate contractual relationships. Id. at 554. Therefore, the Court had no trouble concluding that the plaintiff was both a “broker” and a “finder” for purposes of G.L.c. 259, §7. Moreover, the parties had not had a prior contract, so the potential for the abuses addressed by the Statute of Frauds was high. See id. at 551-52. Indeed, based on the factual record, the Court held that the plaintiff had no reasonable expectation of proving that it was the cause of the transaction for which it was seeking payment. Id. at 554-55.
The factual allegations in this case, which this Court must accept as true, stand in sharp contrast to the facts of Cantell. Spectrum is claiming not a onetime finder’s fee, but an amount in sales commissions that can readily be determined based upon a written agreement that was in effect for 19 years. More recently, at least from January 2009 through June 2011, the parties were operating under a written “Sales Representative Agreement.” There is no evidence that they ever entered into an agreement that used the word “broker” to describe Spectrum’s role.
Cobham correctly notes that, in Cantell, the Appeals Court cited Bay Colony Marketing v. Fruit Salad, Inc., 41 Mass.App.Ct. 662 (1996), for the proposition that “G.L.c. 259, §7 should be interpreted broadly to further its policy determination that agreements for compensation for certain services be in writing.” Id. at 552-53. However, in Bay Colony, the Appeals Court had recognized a lack of clarify about the statute’s reach, noting that “the purpose of the statute is to require written agreements for compensation for certain services, although the scope of such services, based upon the statutory language, is unclear.” Id. at 665 (emphasis added) (footnote omitted). Based on the above-noted statutes and case law, the Court concludes that the Legislature did not intend to include sales representatives such as Spectrum within the scope of “brokers” under G.L.c. 259, §7.
Cobham’s argument that Spectrum was a “finder” for purposes of G.L.c. 259, §7 is far more strained than its argument that Spectrum was a “broker.” Black’s Law Dictionary defines finder as: “an intermediary who brings together parties for a business opportunity.” Black’s Law Dictionary 646 (7th ed. 1999). The definition further explains: “a finder differs from a broker-dealer because the finder merely brings two parties together to make their own contract, while a broker-dealer usu. [sic] participates in the negotiations.” Id. Spectrum alleges that it did more than merely bring together Cobham and Cobham’s customers; it alleges that it made sales to customers upon which commissions are owed. Spectrum was therefore not a “finder” under the ordinary meaning of the term. See supra at 5, n.2.
2. Spectrum’s Allegations Place This Case Outside the Scope of G.L.c. 259, §7
Regardless of whether Spectrum is considered a “broker” or “finder” for purposes of G.L.c. 259, §7, this case should not be dismissed. As the Appeals Court recognized in Pappas, supra, “[occasionally . . . there is a configuration of facts which greatly diminishes the risk of fraud and when, to the contrary, there is risk of inequity if effect is not given to an unwritten agreement.” Id. at 598. The court pointed to reasonable reliance and change of position by the party seeking enforcement of an agreement, and continuing assent of the party against whom enforcement was sought, as factors that can justify an exception to the statute. Id.
The factual allegations in this case, which this . Court must accept as true, put this case squarely within the category of exceptions contemplated by Pappas. Spectrum is claiming an amount in commissions that can readily be determined based upon the 7.5% commission rate that was the subject of awritten contract for more than twenty years. Much of the basis for Spectrum’s claim and Cobham’s defense is set forth in documents that the fact finder can consider in determining whether Spectrum has established the elements of its claims. The recollections of Spectrum’s managers and Cobham’s senior sales executives may well differ as to Cobham’s assurances alleged in paragraph 44 of the Complaint. However, such factual disputes occur in almost every contract dispute, and are no more susceptible of being “cooked up” or the product of “wishful thinking” than the claims in any other case. Certainly, Spectrum has alleged actions taken in reasonable reliance upon Cobham’s continuing assent, which would bring this case within the exception to the Statute of Frauds described by the Appeals Court in Pappas.
Spectrum has a separate argument that Cobham’s emails constituted “offers,” and that Spectrum is entitled to recover commissions based upon its reasonable reliance upon them. See Loranger Construction Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760 (1978) (citing the Restatement (Second) of Contracts for the proposition that “[a]n offer which the offeror should reasonably expect to induce action or forebearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forebearance is binding as an option contract to the extent necessary to avoid injustice”). Although Loranger predates the enactment of G.L.c. 259, §7, the Supreme Judicial Court has cited it for the same proposition in subsequent decisions; it is still good law. See, e.g., Rhode Island Hosp. Trust Nat. Bank v. Varadian, 419 Mass. 841, 849-50 (1995) (“The clear implication of our decision in [Loranger] is that an *112 action based on reliance is equivalent to a contract action”).
For all the above reasons, the Court rules that G.L.c. 259, §7 does not require dismissal of Spectrum’s complaint.
3. Spectrum’s Allegations Sufficiently State its Causes of Action
Cobham’s alternative arguments for dismissal of the Complaint all involve the sufficiency of the allegations in the Complaint. Spectrum’s detailed Complaint more than sufficiently alleges the elements of claims for quantum meruit, promissory estoppel, and violation of G.L.c. 93A. As for Spectrum’s G.L.c. 93A claim, Cobham correctly notes that an intentional withholding of payment based on a good-faith difference of opinion as to whether money is owed does not constitute a c. 93A violation. See, e.g., Duclersaint v. Federal Nat'l Mortg. Ass’n, 427 Mass. 809, 814-15 (1998). Discovery may establish that Cobham had a good-faith basis to withhold payment of the commissions allegedly owed, but Spectrum has alleged that Cobham wrongfully withheld payment for an improper purpose, which is sufficient to survive a motion to dismiss.
ORDER
Motion For Judgment On The Pleadings (pleading #4) of defendant Cobham Defense Electronic Systems Corporation is DENIED. The case shall proceed according to the existing tracking order.

Black’s Law Dictionary defines broker as: “ [a]n agent who acts as an intermediary or negotiator, esp. [sic] between prospective buyers and sellers ...” Black’s Law Dictionary 187 (7th ed. 1999). Black’s Law Dictionary does not define sales representative, but Webster’s defines sales representative as “a person employed to sell goods or services.” Webster’s New World College Dictionary 1184 (3rd ed. 1997). The Appeals Court has stated that the terms “broker” and “finder” should be given their ordinary meanings. Cantell v. Hill Holliday Connors, 55 Mass.App.Ct. 550, 553 (2002).